KOTZKE v. KOTZKE'S ESTATE.

1. ILLEGITIMATES—COMMON LAW—CIVIL LAW—DESCENT AND DISTRIBUTION—SUBSEQUENT MARRIAGE OF PARENTS.
    At common law a child born out of wedlock did not inherit; but under the civil law the illegitimate inherited from the mother, and succeeded to the inheritance of the father in event the parents married, with the exception of the offsprings of adulterous relations, they being incapable of being legitimated.[1]

2. SAME—OFFSPRING OF ADULTEROUS RELATIONS.
    While Michigan by statute adopted at least in part the doctrine of the civil law, the exception that the offsprings of adulterous relations were incapable of being legitimated was not adopted either by statute or as a matter of public policy.

[1]See note in 23 L. R. A. 753.

3. SAME—MARRIAGE OF PARENTS—PRESUMPTION OF LEGITIMACY.

The marriage of the mother and putative father after the birth of an illegitimate does not create the same presumption of legitimacy as though the child had been born in lawful wedlock; the presumption in the latter case being one of the strongest known to the law, and founded upon public policy.

4. SAME—MARRIAGE OF PARENTS—ACKNOWLEDGMENT BY FATHER—STATUTES—PRESUMPTION.

Where plaintiff, an illegitimate, was born previous to the passage of Act No. 55, Pub. Acts 1881 (section 11798, 3 Comp. Laws 1915), and while section 4312, Comp. Laws 1871, was controlling, which provided, "When, after the birth of an illegitimate child, his parents shall intermarry, and his father shall, after the marriage, acknowledge him as his child, such child shall be considered as legitimate to all intents and purposes," there being no presumption of legitimacy from the marriage alone, to entitle him to inherit, the burden was upon him to establish the three essential elements of the statute, viz., (1) marriage of (2) the parents, and (3) acknowledgment of the husband after marriage.

5. APPEAL AND ERROR—QUESTIONS FOR REVIEW.

In a case tried by the judge without a jury, the findings of fact must be accepted by the appellate court unless they are against the overwhelming weight of the evidence; if against the overwhelming weight of the evidence, if they do not support the judgment, or if the trial judge erroneously considered or refused to consider controlling testimony, this court as a reviewing court must reverse.

6. SAME—EVIDENCE—RULINGS OF TRIAL JUDGE—REVIEW.

Where controlling facts were established by undisputed testimony which the trial judge regarded as incompetent and failed to take into consideration, and therefore made no finding thereon, it is the duty of the appellate court to consider the correctness of such rulings and the admissibility of such testimony.

7. ILLEGITIMATES—EVIDENCE—PEDIGREE—HEARSAY—DESCENT AND DISTRIBUTION.

In proceedings by an illegitimate for a share of decedent's estate as a son, the question of pedigree being involved and plaintiff's mother being deceased, her statements made

at about the time that plaintiff was born were not objectionable within the hearsay rule, but were admissible.

8. SAME.

Testimony by a brother of plaintiff's mother, at whose home he was born, that at that time decedent was not acquainted with his sister, and that she told him who was the father of plaintiff, and that it was not decedent, *held*, admissible.

9. SAME—JUDGMENT—REVIEW—APPEAL AND ERROR.

Where there was no finding by the trial judge that decedent generally acknowledged plaintiff as his son, and no proof to justify such finding, the judgment of the court below in favor of plaintiff is without support and must be reversed.

Error to Sanilac; Beach, J. Submitted February 6, 1919. (Docket No. 60.) Decided April 3, 1919.

Herman Kotzke appealed to the circuit court from a final order of distribution of the estate of William Kotzke disallowing his claim as heir at law of said decedent. Judgment for claimant. Defendant brings error. Reversed, and order of probate court affirmed.

*W. H. Burgess*, for appellant.

*George Flott*, for appellee.

FELLOWS, J. Plaintiff was born January 30, 1880. His mother was Ulreka Wendorf, then unmarried. He was born at the home of William Wendorf, a brother of Ulreka's. July 13th following Ulreka married decedent, William Kotzke. She died in childbirth, December 11, 1881. On March 16th following Kotzke married Wilhelmina Paape, by whom he had five children, all of whom together with Wilhelmina survived his death. This controversy arises upon the order of distribution of his estate. The probate court declined to recognize plaintiff's claim to the share of a son; the circuit court, where the case was tried without a jury, recognized such claim.

At common law a child born out of wedlock did not

inherit; he was regarded as the son of nobody; the blood of no ancestor coursed in his veins. But the civil law was more indulgent. It took heed of the innocence of the issue of such illicit relations, and the illegitimate inherited from the mother, and succeeded to the inheritance of the father in event the parents married. Michigan in common with most, if not all, of the States of the Union, early adopted at least in part the doctrine of the civil law in this regard. As early as 1820 the governor and judges of the then territory by section 8 of "An act regulating marriages" (1 Territorial Laws, pp. 646, 649) enacted:

"*And be it further enacted,* That when a man, having by a woman one or more children, shall afterwards intermarry with such woman, such child or children, if recognized by him, shall be thereby legitimated. The issue also of marriages, declared null in law, shall nevertheless be legitimate."

At the time of the marriage of William Kotzke to Ulreka Wendorf and until September 10, 1881, when Act No. 55, Pub. Acts 1881 (3 Comp. Laws 1915, § 11798), took effect, the statute (2 Comp. Laws 1871, § 4312) provided:

"When, after the birth of an illegitimate child, his parents shall intermarry, and his father shall, after the marriage, acknowledge him as his child, such child shall be considered as legitimate to all intents and purposes."

The law now in force (3 Comp. Laws 1915, § 11798) is as follows:

"When, after the birth of an illegitimate child, his parents shall intermarry, or without such marriage, if the father shall, by writing under his hand acknowledge such child as his child, such child shall be considered legitimate for all intents and purposes: *Provided,* That such acknowledgment shall be executed and acknowledged in the same manner as may be by law provided for the execution and acknowledgment

of deeds of real estate, and be recorded in the office of the judge of probate of the county in which such father is at the time a resident."

We agree with counsel for plaintiff that if the status of plaintiff was fixed as that of a legitimate child prior to the taking effect of the act of 1881, such status would not be changed because the new act provided additional requirements. In other words, if plaintiff had been legitimated prior to the act of 1881 that act would not illegitimate him.

While by statute we have adopted some of the provisions of the civil law upon this subject, we have not by statute adopted them all. Under the civil law the subsequent marriage of the parents and recognition legitimated the offspring born out of lawful wedlock; still the civil law excepted from this rule the offsprings of adulterous relations, such offsprings being known as adulterine bastards, and under the civil law as well as the Code Napoleon and the law of Scotland incapable of being legitimated. We are called upon to consider whether this exception should be adopted in this State in view of the fact which we shall presently consider that decedent was not divorced from his first wife until shortly before his marriage to Ulreka.

We have not by statute adopted this exception, nor do we think it should be adopted as an incident to the part adopted or as a matter of public policy. In *Sams* v. *Sams' Adm'r*, 85 Ky. 396 (3 S. W. 593), the court of appeals of Kentucky adopted the exception as a matter of public policy, and in *Kealoha* v. *Castle*, 210 U. S. 149 (28 Sup. Ct. 684), a decision of the supreme court of the Territory of Hawaii so holding was affirmed, but upon the ground that the decision reviewed was the construction of a statute of that country adopted prior to annexation. But the weight of authority is the other way. See *Hawbecker* v. *Haw-*

*becker*, 43 Md. 516; *Carroll* v. *Carroll*, 20 Tex. 731; *Drake* v. *Hospital Ass'n*, 266 Mo. 1 (178 S. W. 462); *Miller* v. *Pennington*, 218 Ill. 220 (75 N. E. 919, 1 L. R. A. [N. S.] 773); *Adams* v. *Adams*, 36 Ga. 236; *Ives* v. *McNicoll*, 59 Ohio St. 402 (53 N. E. 60, 43 L. R. A. 772).

We are unable to follow the contention of plaintiff's counsel that the marriage of these parties after the birth of plaintiff created the same presumption of legitimacy as though plaintiff had been born in lawful wedlock. The presumption of legitimacy of children born in lawful wedlock is one of the strongest known to the law. In *People* v. *Case*, 171 Mich. 282, this court, speaking through Mr. Justice BIRD, said:

"The rule that a child born in lawful wedlock will be presumed to be legitimate is as old as the common law. It is one of the strongest presumptions in the law. The ancient rule made the presumption conclusive, if the husband was within the four seas. The modern one permits the presumption to be overcome, but only upon proof which is very convincing."

See, also, *Egbert* v. *Greenwalt*, 44 Mich. 245 (38 Am. Rep. 260); *Rabeke* v. *Baer*, 115 Mich. 328. This doctrine is founded upon public policy. And while there is authority tending to support counsel's contention (see *Binns* v. *Dazey*, 147 Ind. 536 [44 N. E. 644]; *Drake* v. *Hospital Ass'n, supra*) the statutes being considered in these cases while of similar purport did not use the language of our act, and we are not inclined to follow these holdings. Under the act here considered three things must concur: (1) marriage of (2) the parents, and (3) acknowledgment by the husband after marriage. There was no presumption of legitimacy from the marriage alone, and to entitle plaintiff to inherit the burden was upon him to establish the three essential elements of the statute. Plaintiff's counsel insists that he has successfully discharged this burden.

We now come to the facts of the instant case. The findings of fact by the trial judge must be accepted unless they are against the overwhelming weight of the evidence. If against the overwhelming weight of the evidence, or if they do not support the judgment, or if the trial judge erroneously considered or refused to consider controlling testimony, this court as a reviewing court must reverse. Some of the facts here are not in dispute. As to such findings of the court as are based on disputed testimony we accept the findings of the trial judge. Where controlling facts are established by undisputed testimony, which testimony the trial judge regarded as incompetent and failed to take into consideration, and therefore made no finding thereon, our duty requires us to consider the correctness of such rulings and the admissibility of such testimony. It is admitted that William Kotzke was a married man occupying a farm some six or seven miles from the home of Ulreka Wendorf. He secured a divorce from his wife June 23, 1880, on the grounds of adultery, desertion also being alleged. He married Ulreka Wendorf July 13, 1880. It is admitted that plaintiff was born January 30, 1880. It is admitted that plaintiff was reared in the Kotzke home and remained there until he was nearly 17 years old. Plaintiff went by the name of Kotzke but he admits that his right to such name was many times questioned in the family.

The brother of Ulreka, at whose home plaintiff was born, testified that decedent was not acquainted with his sister at the time plaintiff was born. He testified that decedent became acquainted with her after that event; that her mistake was told to him and he expressed his willingness to marry her notwithstanding it, and agreed to have the child baptized. He testified that it was generally known in the family, and Ulreka told him, who the father of plaintiff was, and that it

was not Kotzke. The trial court regarded this testimony as of questionable admissibility, and it is patent that he did not consider it, as not only was it undisputed, but it was corroborated on the cross-examination of a sister of Ulreka, who was called as a witness by plaintiff. The question of pedigree being involved and plaintiff's mother being deceased, we are impressed that her statements made about the time the child was born and when there was no probability of untruthfulness on her part and nothing to prompt her to conceal the facts from the members of her own family, were not objectionable within the hearsay rule but were admissible. Mr. Greenleaf in his work on Evidence lays down the rule:

"But it is now settled, that the law resorts to hearsay evidence in cases of pedigree, upon the ground of the interest of the declarants in the person from whom the descent is made out, and their consequent interest in knowing the connections of the family. The rule of admission is, therefore, restricted to the declarations of deceased persons who were related by blood or marriage to the person, and, therefore, interested in the succession in question; and general repute in the family, proved by the testimony of a surviving member of it, has been considered as falling within the rule." 1 Greenleaf on Evidence (16th Ed.), p. 198.

Lord Chancellor Erskine in *Vowles* v. *Young*, 13 Ves. 140, said:

"Courts of law are obliged in cases of this kind to depart from the ordinary rules of evidence; as it would be impossible to establish descents according to the strict rules by which contracts are established, and subjects of property regulated; requiring the facts from the mouth of the witness, who has the knowledge of them. In cases of pedigree therefore recourse is had to a secondary sort of evidence: the best the nature of the subject will admit; establishing the descent from the only sources that can be had."

In *Fulkerson* v. *Holmes*, 117 U. S. 389 (6 Sup. Ct. 780), it was said:

"The fact to be established is one of pedigree. The proof to show pedigree forms a well-settled exception to the rule which excludes hearsay evidence. This exception has been recognized on the ground of necessity; for, as in inquiries respecting relationship or descent, facts must often be proved which occurred many years before the trial, and were known to but few persons, it is obvious that the strict enforcement in such cases of the rules against hearsay evidence would frequently occasion a failure of justice."

See, also, *Goodright* v. *Stevens*, 2 Cowp. 591; *Eisenlord* v. *Clum*, 126 N. Y. 552 (27 N. E. 1024, 12 L. R. A. 836); *Stein* v. *Bowman*, 13 Pet. (U. S.) 209; 2 Wigmore on Evidence, § 1480 *et seq.* If this testimony is admissible, and we think it is, if it is accepted and it is undisputed and bears all the earmarks of truthfulness, it establishes that someone other than Kotzke was plaintiff's father.

We now come to the question of acknowledgment, of recognition by decedent of plaintiff as his offspring. There is no finding that such recognition was general, nor would such finding be justified on the facts. The rearing of plaintiff in decedent's home unexplained might be evidence of such general recognition dependent on other facts connected with it. In the instant case plaintiff admits his presence in the home and the use of the name Kotzke caused friction between decedent and his wife. In his lifetime decedent stated that he had promised Ulreka to keep the boy until he was big enough to take care of himself. Outside the rearing of plaintiff in the Kotzke home and his bearing that name, the only proof of acknowledgment, of recognition appearing in the record is as follows: Plaintiff's baptism when a child; the census enumeration of 1890; the testimony of one neighbor that in a casual conversation about the number of children

each had decedent said he had six, four boys and two girls, enumerating plaintiff as one of the boys; the testimony of plaintiff that once when the preacher was at their house deceased stated of plaintiff, "this boy is from my other wife." While considerable force seems to have been given to the fact that decedent married Ulreka shortly after the divorce, it is apparent that decedent did not possess the finer sensibilities generally recognized as he married his third wife about three months after the death of his second.

The object of this statute is to enable parents by marrying and subsequent recognition to clothe their offspring with legitimacy. It does not supersede or take the place of the adoption statute, and applies only where the parties marrying are the "parents." It requires acknowledgment, recognition by the father after marriage. We think this means something more than one or two casual statements in a lifetime under circumstances not requiring a full statement of the situation. It requires a general recognition. Some of the States, notably Iowa, use the word "general" in their statute, but we think all these statutes contemplate a general recognition. We do not mean that the father must proclaim his paternity of the child from the housetop, but when and as circumstances arise requiring a recognition it should be forthcoming; it should be general in its character. In *Succession of Vance,* 110 La. 759 (34 South. 767), it was said:

"But a mere reference to her in casual conversation one time as his child is not that proof of acknowledgment which makes of her what the law describes as a natural child.

"If calling a child his offspring be relied on to establish legal acknowledgment, the proof should be that the father was in the habit of so calling the child when speaking of it, or did so in habitual conversation with others."

In *Tout* v. *Woodin*, 157 Iowa, 518 (137 N. W. 1001), Mr. Justice Weaver, speaking for the court, said:

"It cannot be supposed that in any case a putative father, however sincere his purpose to recognize an illegitimate child, nor however frankly he may admit the relationship when there is occasion for him to speak of it at all, will make it the subject of voluntary rehearsal to every person whom he meets, or force the unpleasant subject into conversation with others. If in his intercourse with neighbors, associates, and friends he makes no attempt to conceal the relationship he bears to the child, but acknowledges it openly whenever any reference to the subject is made, and this recognition is so often repeated to different people as to evince his willingness that all who care to know the truth may understand that he admits himself the father of the child, we regard it as sufficiently general for the purposes of the statutory rule, although many of his acquaintances may never have heard him mention the matter."

As stated there is no finding of acknowledgment by deceased, general or even frequent; no finding of general recognition that the plaintiff was the offspring of decedent. Nor would such finding have been justified on the proofs. Without such finding and facts to support it the judgment is without support.

It follows from what has been stated that the judgment of the circuit court must be reversed and that of the probate court affirmed.

BIRD, C. J., and STEERE, BROOKE, STONE, and KUHN, JJ., concurred with FELLOWS, J.

OSTRANDER, J. The weight of evidence is opposed to the conclusion that William Kotzke was father of Herman. For this reason I concur in reversing the judgment.

MOORE, J., concurred with OSTRANDER, J.