[File No. 6766.]

IN THE MATTER OF THE ESTATE OF OSCAR H. BERG,
Deceased.

JULIANA ELIZABETH BERG, Respondent, v. WILLIAM BERG,
Isaac Berg, Martha Berg, and Unknown Sisters of Deceased, Respondents,

and ·

FILMORE SUVA, Appellant.

(4 NW(2d) 575, 140 ALR 1312.)

Opinion filed June 8, 1942.

*Fred T. Gulhbert* and *James E. Burdell,* for appellant.
*Kehoe & Kehoe,* for respondent.

NUESSLE, J.  Oscar Henry Berg died intestate in August, 1938, a resident of Towner county, North Dakota.  He left a substantial estate. This controversy is as to the descent and distribution thereof.

Berg was born in Finland.  Sometime about 1895 he came to this country and took up his residence in Hamlin county, South Dakota. He worked for and lived with a family by the name of Suva.  He remained there until late in the fall of 1897, when he came to North Dakota

and filed on a government homestead in Towner county.  In 1908 he married.  He and this wife lived on the homestead until her death in 1927.  In March, 1929, he and Juliana Elizabeth Berg, the petitioner and respondent herein, were married.  They lived together as husband and wife until his death in August, 1938.  No children were born to either of these marriages.  Berg died intestate, leaving a considerable estate of real and personal property situated in North Dakota.

While Berg was resident in South Dakota, he became intimate with Ida Suva.  On December 18, 1897, while she was living in the Suva home in South Dakota, Ida Suva, then unmarried, gave birth to the cross petitioner and appellant Filmore Suva.  The child Filmore lived at the place of his birth until he was about twenty years of age, at which time he moved to Oregon, where he now resides.  He never became a resident of the state of North Dakota.  Filmore never saw Oscar Henry Berg.  He never received any support or maintenance from him, and no communication was ever had between him and Berg.

Sometime in January, 1898, one of Berg's neighbors told Berg he had received a letter from Heming Suva, Ida Suva's brother, saying that she had given birth to a child and claimed that Berg was its father.  Berg at once wrote to Heming, inquiring if these things were true.  Shortly after he also wrote to Ida inquiring about the matter, and again in April, 1898, he wrote Heming about it.  In these letters he said he had heard it was charged that he was the father of Ida's child.  He expressed doubt that this could be so.  It is to be inferred, however, from what he wrote, that he and Ida had been intimate.  But the inference also to be drawn from his words is that there had been no relations between them prior to May 12, 1897.  He said he would like to know what the facts were with respect to the birth of this child and whether it was claimed he was its father; that if it could be established he was its father he would marry Ida and take her and the child into his home and care for them as a husband and father should.  As he quaintly put it in his letter to Heming:  ".  .  .  to my memory I have not befor May 12th so I hope you see to best of your ability and if it is so that it is mine meaning that if you so find it I want to be its father and take Ida for my wife and love her.   but if it should hapen as it so often dos in the world to get to bee father to somone elsse's child, that would

be saury thing as you unterstand your selfes. so takr notes and think if she has ben eneywhers working last spring about that time. . . ."

However, it does not appear that there was any response to his letters. Certainly nothing further was done about the matter in the way of making a claim that he was the father of the child until after the lapse of more than forty years and he was dead.

On Berg's death, his widow, Juliana Elizabeth Berg, filed her petition in the county court of Towner county, praying that the estate be probated and that it be distributed to her as the widow and to the surviving brothers and sisters of Berg. Then Filmore Suva filed a cross petition, claiming as the son and heir of the deceased. The case was tried in the county court of Towner county. In addition to the facts hereinbefore set out, Suva introduced testimony to the effect that about a year after the child was born to Ida Suva, Berg went to South Dakota and, at that time, in response to a question as to whether he had been "to Suva's place to see his boy," he said he had; that in response to an inquiry by William Berg, his brother, he stated that the child was his; and, on another occasion, he told Heming Suva that he was the father of the child. Ida Suva, called as a witness, testified he was the child's father. Since Berg was dead of course there could be no denial of this testimony by him.

The county court held that the cross petitioner Suva was not entitled to share as an heir. Suva appealed to the district court where a like decision was rendered. Thereupon, he perfected the instant appeal to this court.

Chapter 53, of the Civil Code, §§ 5741 et seq, Comp. Laws 1913, fixes the rights of succession to the estates of intestates. Section 5743 fixes the rights of legitimate children, and § 5745 provides for inheritance by illegitimate children. Eddie v. Eddie, 8 ND 376, 79 NW 856, 73 Am St Rep 765. Appellant predicates his claim as an heir on the theory that as the natural son of Berg he inherits by reason of the written acknowledgment by Berg of his paternity; that even though there was no such written acknowledgment as to entitle him to inherit he was, under the facts and circumstances established, shown to have been adopted by Berg; that, in any event, he had been legitimated by operation of law.

Section 5745, Comp. Laws 1913, provides: "Every illegitimate child is an heir of the person who in writing signed in the presence of a competent witness acknowledges himself to be the father of such child; and in all cases is an heir of his mother and inherits his or her estate in whole or in part, as the case may be, in the same manner as if he had been born in lawful wedlock; but he does not represent his father or mother by inheriting any part of the estate by his or her kindred either lineal or collateral, unless before his death his parents shall have intermarried and his father after such marriage acknowledges him as his child or adopts him into his family, in which case such child and all the legitimate children are considered brothers and sisters and on the death of either of them intestate and without issue the others inherit his estate and are heirs, as hereinbefore provided, in like manner as if all the children had been legitimate, saving to the father and mother respectively their rights in the estates of all the children in like manner as if all had been legitimate. The issue of all "marriages null in law or dissolved by divorce are legitimate."

Section 5745 was considered and construed in the case of Eddie v. Eddie, supra. We there said concerning it: "It will be noticed that by the first part of this section the father may, by a written acknowledgment, properly witnessed, enable his illegitimate child to inherit, and that in any case the child inherits from its mother, but in either case the inheritance is that of an illegitimate. . . . On the other hand, by the succeeding provisions, when the relation of parent and child has been legally created, either by the marriage of the parents, and the subsequent acknowledgment of the child by its father, or the adoption of the child by the father into his family, such child then inherits as a legitimate child, along with children born in wedlock. The adoption into the family which here creates the right to inherit is the adoption provided for in § 2806 of chapter 8, of the Civil Code. . . ."

Section 2806 is now § 4450 of Chapter 9 of the Civil Code, Comp. Laws 1913, which provides: "The father of an illegitimate child by publicly acknowledging it as his own, receiving it as such with the consent of his wife if he is married, into his family, and otherwise treating it as if it was a legitimate child, thereby adopts it as such, and such child is thereupon deemed for all purposes legitimate from the time of

its birth. The foregoing provisions of this chapter do not apply to such an adoption."

In the instant case, the facts established fit none of the situations contemplated by the foregoing statutes. Appellant's contention first is that the letters to which we have heretofore referred, written by Berg to Heming and Ida Suva (there is no other writing) constitute an acknowledgment that Berg was the appellant's father so as to meet the requirements in this respect of the first portion of § 5745. With this we cannot agree. In the first place, they express doubt as to his paternity rather than acknowledge that paternity. In the second place, it does not appear that they were signed in the presence of any witness so as to entitle him to inherit under the statute as an illegitimate child. Considering the second portion of the statute, are the facts such as to show the legal creation of the relation of parent and child? The answer must be, No. Berg and Ida Suva were never married. So there could not be a subsequent acknowledgment of the child by Berg. There remains then the query as to whether there was an adoption of the appellant by Berg into his family pursuant to the provisions of § 4450, supra. To establish such an adoption the record must show that Berg was appellant's natural father; that he publicly acknowledged himself to be such father; that, with the consent of his wife, he received the appellant into his family; and that he otherwise treated him as his legitimate child. Conceding that the first of these requirements is established, the remainder are not. Berg never publicly acknowledged that appellant was his child. The most that can be said in this respect is that on three or four occasions when he was in South Dakota shortly after the child was born, he admitted, or did not deny, that he was its father. In any event, there was no general acknowledgment. What he said was in response to questions put in one instance by his brother, in another by his brother's housekeeper, and a statement made to Heming Suva, all of which have heretofore been detailed. This was far from a public acknowledgment. See, Kotzke v. Kotzke, 205 Mich 184, 171 NW 442. Berg married his first wife in 1908. Appellant was then about ten years old. Berg and this wife lived together as husband and wife for almost twenty years until her death in 1927. The record does not show she ever knew that there was such a person as Filmore Suva, and

certainly it fails to show that she knew there was any claim of relationship between Filmore Suva and Berg. Nor did his second wife, the petitioner and respondent herein, know that any claim had ever been made that appellant Suva was Berg's child. Suva was never received into Berg's family as his child. And there is not a shred of evidence that Berg treated Suva as if he were a legitimate child. Accordingly, we must hold that the legal relation of parent and child was not created by adoption or otherwise pursuant to either § 5745, supra, or § 4450, supra. See, in this connection, Blythe v. Ayres, 96 Cal 532, 31 P 915, 19 LRA 40; Thompson v. Thompson, 177 Okla 437, 60 P (2d) 615; Baird v. Baird, 182 Cal 338, 188 P 43; Re Forney, 43 Nev 227, 184 P 206, 186 P 678, 24 ALR 553.

But the appellant does not rest his claim alone on the foregoing statutes. He contends further that he was, in any event, legitimated pursuant to the provisions of chapter 70, Session Laws 1917 (§§ 10,500b1 et seq., 1925 Supplement) and thus inherits pursuant to the provisions of § 5743, Comp. Laws 1913, heretofore referred to. Chapter 70 provides:

"Section 1. Every child is hereby declared to be the legitimate child of its natural parents and as such is entitled to support and education, to the same extent as if it had been born in lawful wedlock. It shall inherit from its natural parents and from their kindred heir lineal and collateral.

This section shall apply to cases where the natural father of any such child is married to one other than the mother of said child, as well as where he is single. Provided, however, this law shall not be so construed as to give to said child a right to dwelling or a residence with the family of its father, if such father be married.

Section 2. The mother of any child born out of lawful wedlock, may within one year after the birth of such child bring an action in the district court to establish the defendant to be its father. In such cases the parentage may be proved like any other fact. Provided, that the mother of said child shall not be considered a competent witness in any case where the alleged natural father of said child shall be dead at the time of the trial. Provided, that a statement in writing may be made

by the parents of said child, admitting the parentage thereof, and upon which a judgment may be entered.

"Section 3. This action shall be deemed cumulative as to the remedies contained in §§ 10,483 to 10,500 inclusive, relating to bastardy proceedings, but all children hereafter born in this state shall be deemed to be legitimate."

In that behalf, appellant contends that he is Berg's son born out of wedlock; that the statute creates the status of legitimacy for all illegitimates, regardless of age, whether born before or after its enactment; that Berg was at all times after the enactment of the statute until his death a resident of the state of North Dakota and the statute so operated that appellant took on the status of legitimacy even as though he had been born in wedlock; that the statute stands unrepealed and even though it were repealed its effect in legitimating him was indelible and no subsequent legislative action could undo its effect in that respect.

We will first consider this statute to determine whether it affects children born before it became effective as well as those after-born. The respondent insists that it affects only after-born children. Suva was twenty years of age when the statute was enacted. If it is prospective only, then he can predicate no claim under its provisions and it becomes unnecessary to consider the other contentions made by him. After a careful examination of the statute we are of the opinion that the respondent is right in saying that it affects only after-born children.

The statute is unclear and uncertain in its wording. Our duty here is to ascertain the legislative intent expressed by it. Since the wording is not plain, we must resort to construction to do this. State ex rel. Linde v. Taylor, 33 ND 76, 156 NW 561, LRA1918B 156, Ann Cas 1918A 583. And we must consider all four corners of the act as well as its title in construing it and, as far as possible, give effect to the legislative intent as disclosed by the whole enactment. McCurdy v. Patterson, 53 ND 423, 206 NW 228; Murray Bros. v. Buttles, 32 ND 565, 156 NW 207; 2 Lewis's Sutherland, Stat Constr 2d ed §§ 368 et seq.

The title of the act is "An Act Declaring every Child to be the Legitimate Child of its Natural Parents; Making such Child an Heir of such Parents, and Providing the Procedure for Establishing such Parentage." The first part of the opening sentence of § 1 of the act reads: "Every

child is hereby declared to be the legitimate child of its natural parents." Had the sentence ended here it might well be argued that it was applicable to all offspring regardless of age. But the effect of what is thus said is inferentially greatly limited by the words of the remainder of the sentence, which are: "and as such is entitled to support and education to the same extent as if it had been born in lawful wedlock." Here the present tense is used and the words are "is entitled." Reading the whole sentence it is clear that it refers to infant offspring who are thus entitled to support and education during the years of their infancy even as if they had been born in wedlock. The next sentence of § 1 is wholly consistent with such a construction and merely fixes the right of the child in the way of inheritance.

The second paragraph of § 1 then says that that section shall apply to cases where the natural father "of any such child" is married to one other than the mother of "said child" as well as where he is single, and concludes with a proviso which denies to "said child" the right of dwelling or residence with the family of its father if such father be married. Clearly, "such child" and "said child" is the child for which provision is made in the first paragraph of the section. And again the statute speaks in the present tense and is concerned with "infant offspring," that is, those who, if born in wedlock would have the right to dwell in the households of their parents, and not with "adult offspring" who have no such right. Thus construed all of the provisions of § 1 of the act are consistent with each other and with the first clause of the title, to wit: "An Act Declaring every Child to be the Legitimate Child of its Natural Parents" and with the first portion of the second clause of the title "Making such Child an Heir of such Parents."

The latter portion of the second clause of the title reads "and Providing the Procedure for Establishing such Parentage." Section 2 of the act, consistent with this portion of the title, provides that "the mother of any child born out of lawful wedlock may within one year after the birth of such child bring an action in the district court to establish the defendant to be its father." It further provides that "a statement in writing may be made by the parents of such child, admitting the parentage thereof, and upon which a judgment may be entered." This section must be read and construed in the light of that part of the

title referring to the procedure. Thus viewed, § 2 has the effect of excluding any procedure for establishing parentage other than that therein provided. The use of the definite article "the" italicized above in the last clause of the title, has a restrictive effect. It points to the procedure set forth in the act itself. Thus the title, reciting that the act provides *the* procedure to be followed in establishing parentage under it, gives notice that the purpose of the act is to establish such procedure and thereby excludes resort to any other procedure. Furthermore, it must be remembered that the act creates a new right, the right of a child born out of wedlock to have its parentage established in a judicial proceeding, not alone for the purpose of providing for its support and maintenance during the years of its infancy as in a bastardy proceeding, but to legitimate it and endow it by virtue of such adjudication with all the rights of a child born in wedlock. And the rule is that where a statute creates a new right, one not in existence prior to its enactment, and provides the procedure for vindicating that right, such procedure is exclusive. 1 CJ 986; 1 CJS 974; 1 Am Jur 411, Actions; Pollard v. Bailey, 20 Wall. (US) 520, 22 L ed 376; Globe Newspaper Co. v. Walker, 210 US 356, 52 L ed 1096, 28 S Ct 726; State ex rel. Waldorf v. Hill, 217 Wis 59, 258 NW 361; Lewis's Sutherland, Stat Constr 2d ed, § 572. Since the action thus provided must be brought within one year after the birth of such child, it is again manifest that by the word "child" as used in it is meant an infant and not an adult.

Sections 10,483 to 10,500, inclusive, Comp. Laws 1913, relating to bastardy proceedings were in effect when chapter 70, Session Laws 1917 was enacted. The purpose of the remedies therein contained was to establish the paternity of children born out of wedlock and to compel the fathers to contribute to the support and maintenance of their illegitimate offspring. Section 3 of chapter 70, supra, provides: "This action shall be deemed cumulative as to the remedies contained in §§ 10,483 to 10,500, inclusive, relating to bastardy proceedings." The words "this action" in the statute clearly refer back to the action provided for in § 2, whereby an adjudication may be had as to the parentage of the child either after trial, where issues are formed and evidence introduced, or upon a written statement made by the parents. It is thus evident the legislature intended to create a new right and provide a

means for enforcing that right and, at the same time, to leave effective the remedies provided in the pre-existing bastardy statute. Thus a mother who desired to do so, and it must be presumed that every mother would, was enabled by timely action to legitimate her child born out of wedlock. It would no longer be necessary to resort to a bastardy proceeding with its accompanying ignominy to secure support and maintenance for her child. She could establish by a judicial proceeding, if she initiated that proceeding within one year after the birth of the child, every right that a child born in wedlock might have as against its father, save only in the excepted cases the right to dwell in its father's family. But, as a measure of precaution, the legislature left effective the remedies of the bastardy statute. It is to be noted also that the legislature must have had in mind the thought expressed by Berg when he wrote to Heming Suva "But if it should happen, as it so often does in the world to get to be father to someone else's child that would be a sorry thing." For, while § 2 of the act says in such case parentage may be proved like any other fact, it also provides that the mother shall not be a competent witness in any case where the alleged father shall be dead at the time of the trial. And that, doubtless, was also the reason why the time within which the action to establish parentage might be brought was limited to one year, the time within which a bastardy proceeding by the mother was required to be brought. Nor can the final clause of § 3 be overlooked. That clause is "but all children hereafter born in this state shall be deemed to be legitimate." It seems to us that should there be any question as to the matter after considering the preceding provisions of the act, this clause makes clear the legislative intent that it should apply only to children born after it became effective. Thus considering the act as a whole in the light of its title, and giving consistent and harmonious effect to all its provisions, we must hold that the word "child" as used in it means "infant offspring" and so the operation of the statute was intended to be prospective only. It did not disturb existing remedies. It did not repeal the pre-existing bastardy statute. And §§ 4450 and 5745, Comp. Laws 1913, heretofore referred to remained unaffected. That is, chapter 70, Session Laws 1917, merely created a new and additional right in favor of natural children born after it became effective and provided the procedure for vindicating that right. This

was the construction given the statute by the trial court. See also Valenzuela v. Silva, 32 Ariz 573, 261 P 40, where the supreme court of Arizona, construing a statute identical with chapter 70, supra, reaches the same conclusion as that at which we have arrived.

Judgment affirmed.

BURR, Ch. J., and BURKE, MORRIS, and CHRISTIANSON, JJ., concur.