PRODUCTION CREDIT ASSOCIATION OF MINOT, a corporation, Plaintiff and Appellee,

v.

Thelma LUND and Kelly D. Lund, Personal Representative of the Estate of Arnold R. Lund, Deceased, Defendants and Appellants.

Civ. No. 11135.

Supreme Court of North Dakota.

June 9, 1986.

Malcolm H. Brown, of Bair, Brown & Kautzmann, Mandan, for plaintiff and appellee.

Lyle G. Witham (argued) and Robert J. Lamont, of Lamont Law Office, Minot, for defendants and appellants.

Nicholas J. Spaeth, Atty. Gen., and Steven E. Noack (argued) and Sarah M. Vogel, Asst. Attys. Gen., Bismarck, for amicus curiae State.

Keith C. Magnusson, Bismarck, for amicus curiae North Dakota Bankers Assn.

Nancy J. Hellerud, Minot, and James Fitzsimmons, New Town, for amicus curiae Farm Law Project, sponsored by North Dakota Legal Services and Legal Assistance of North Dakota.

VANDE WALLE, Justice.

Thelma Lund and Kelly Lund, personal representative of the estate of Arnold Lund, appealed from an amended judgment of the district court foreclosing two mortgages held by the plaintiff, Production Credit Association of Minot (PCA), and denying the Lunds' request to reopen the judgment under Rule 60(b), N.D.R.Civ.P. We reverse that part of the amended judgment denying the Lunds' motion to vacate the judgment, and we remand for further proceedings.

During September 1983, the Lunds borrowed $150,000 from PCA. They secured the loan with two mortgages in the amount of $150,000 each on two separate farmland properties which the Lunds were purchasing under separate contracts for deed. Asserting that the Lunds had defaulted on the loan, PCA filed an action to foreclose the mortgages. When the Lunds did not file a timely answer, PCA moved for a default judgment. The Lunds did not respond to the motion, and default judgment of foreclosure was entered by the court.

The Lunds filed a motion to reopen the judgment under Rule 60(b), N.D.R.Civ.P., or, in the alternative, for relief from the judgment under the provisions of Section 28–29–04, N.D.C.C. The district court denied the Lunds' request for relief on the ground that Section 28–29–04, N.D.C.C., had "self terminated once the price of farm products equalled the cost of production."

The district court entered an amended judgment allowing PCA to correct a legal description in the original judgment and denying the Lunds' request to reopen the judgment.

The Lunds raise the following issues, the resolution of which are necessary to disposition of this appeal:

(1) Whether the confiscatory-price defense provision, Section 28–29–04, N.D.C.C., has terminated by its own terms;

(2) Whether Section 28–29–04, N.D.C.C., affords post-judgment relief to a party whether or not that party is entitled to relief from the judgment under Rule 60(b), N.D.R.Civ.P.; and

(3) Whether a statement in the complaint that the PCA "may" seek a deficiency judgment satisfies the notice requirement under Section 32–19–04, N.D.C.C.

Section 28–29–04, N.D.C.C., was enacted by the Legislature in 1933 together with two other provisions, Sections 28–29–05 and 28–29–06, N.D.C.C., in an attempt to deal with issues of foreclosure, farm debt, farm debtor relief, and low farm prices during an agricultural and economic crisis. See *Lang v. Bank of North Dakota*, 377 N.W.2d 575 (N.D.1985). These provisions have been collectively referred to as the confiscatory-price defense statutes. See *Folmer v. State*, 346 N.W.2d 731 (N.D. 1984). The Lunds assert that the district court erred in concluding that Section 28–29–04, N.D.C.C., no longer is in effect. We agree.

The primary purpose of statutory construction is to ascertain the intent of the Legislature. *Hammond v. North Dakota State Personnel Board*, 332 N.W.2d 244 (N.D.1983). Generally, the legislative intent must be sought first from the language of the statutory provision. *Grace Lutheran Church v. North Dakota Employment Security Bureau*, 294 N.W.2d 767 (N.D.1980). In construing a statutory provision we consider the entire enactment of which it is a part, and, to the extent possible, interpret the provision consistent

with the intent and purpose of the entire Act. *Payne v. Board of Trustees,* 76 N.D. 278, 35 N.W.2d 553 (1948); *Coverston v. Grand Forks County,* 74 N.D. 552, 23 N.W.2d 746 (1946); *In re Berg's Estate,* 72 N.D. 52, 4 N.W.2d 575 (1942). Thus, in determining whether Section 28–29–04, N.D.C.C., has expired by its own terms, it is helpful to review the language of all three provisions of the 1933 Act:

"*28–29–04. Power of courts when prices are confiscatory.—Until the price of farm products produced in this state shall rise to a point to equal at least the cost of production,* in comparison with the price of other commodities in general, entering into the business of agriculture, the supreme court of this state and all district and county *courts in this state shall have power,* when it is deemed for the best interests of litigants, to extend the time for serving and filing all papers requisite and necessary for the final determination of any cause. Any such court, in like manner, may stay the entry of judgment or the issuance of execution thereon, or may defer the signing of any order for judgment, or may defer terms of court, *whenever* in the judgment of the court *the strictly legal procedure in any cause will confiscate or tend to confiscate* the property of any litigant by forcing the sale of agricultural products upon a ruinous market." [Emphasis added.]

"*28–29–05. Courts may delay orders in foreclosures.—Whenever any foreclosure proceeding is pending* in any court in this state and the amount of the debt is less than the value of the property involved, *and when any order for judgment will have the force and effect of depriving* a defendant of his home *and confiscating* his property, the court may construe further proceedings to be unconscionable, and may delay the signing of such order to such time as it shall deem it advisable and just to enter the same." [Emphasis added.]

"*28–29–06. Public policy.—*Any court mentioned in section 28–29–04 may take judicial notice of the situation of produc-ers and laborers *when prices of farm products are confiscatory,* and upon the ground of public policy may do all things necessary to be done lawfully to carry out the provisions of sections 28–29–04 and 28–29–05." [Emphasis added.]

■ The district court determined that the phrase within Section 28–29–04, N.D.C.C., "[u]ntil the price of farm products ... shall ... equal at least the cost of production" resulted in a self-termination of the provision when the economic depression of the 1930's ended and farm prices rose above the cost of production. That phrase, when construed together with all provisions of the 1933 Act, expresses a legislative intent that the remedies provided by the Act are to remain in effect and available whenever the stated confiscatory conditions trigger its application. Thus, we believe that a fair and reasonable interpretation of Section 28–29–04, N.D.C.C., is that "whenever" legal procedure will result in the confiscation of property "by forcing the sale of agricultural products upon a ruinous market" the courts, within their discretion, may act as authorized under the provision "until farm products ... equal at least the cost of production." Likewise, Section 28–29–05, N.D.C.C., authorizes the courts to take certain actions "whenever" and Section 28–29–06, N.D.C.C., authorizes certain court actions "when" the triggering conditions arise.

Our interpretation that the Legislature did not intend that these provisions self-terminate is supported by the Legislature's enactment of other laws dealing with the agricultural economic crises during the depression era of the 1930's which included express repeal language. The 1933 Legislature enacted an extension of the redemption period under mortgage foreclosures and in that Act expressly stated that it would "take effect and be in force for a period of two years only." 1933 N.D.Sess. Laws, Ch. 157, § 5. During 1935, the Legislature enacted a law providing relief from mortgage foreclosures and other related activities and in that enactment expressly provided that the authority of the courts

would not extend "beyond July 1, 1937." 1935 N.D.Sess.Laws, Ch. 242, §§ 6 and 9. During the 1937 legislative session, the Legislature declared "a public economic emergency" and provided relief from mortgage foreclosures and other related activities. Once again, the Legislature in that enactment provided an express termination date which stated that the court's authority to act did not extend "beyond July 1, 1939." 1937 N.D.Sess.Laws, Ch. 161, §§ 6 and 9. During 1939, the Legislature again enacted a moratorium on mortgage foreclosures and other related activities under which it expressly limited the effective date of the provision for two years not to extend "beyond July 1, 1941." 1939 N.D.Sess.Laws, Ch. 165, §§ 5 and 8. The 1939 moratorium provision was amended and reenacted by the 1941 Legislature which extended the authority of the courts to act for an additional two years but not "beyond July 1, 1943." 1941 N.D.Sess.Laws, Ch. 190, §§ 1, 5 and 8.

The foregoing enactments clearly demonstrate that when the Legislature intended that a depression-era remedial statute should terminate within a specified time period it manifested its intent with express language to that effect. The confiscatory-price defense provisions as enacted by the 1933 Legislature, in contrast to the foregoing redemption extension and moratorium provisions, do not contain such express termination language. We believe the absence of such language demonstrates the Legislature's intent that those provisions have continued validity.

In support of our determination that the confiscatory-price defense statutes are currently in effect, we also recognize that they were recodified as part of the Revised Code of 1943 [1943 N.D.Sess.Laws, Ch. 201] and were reenacted in 1961 as part of the North Dakota Century Code [1961 N.D. Sess.Laws, Ch. 96]. The recodification or reenactment of a statutory provision reaffirms the continuing validity of the provision. See, Sutherland Stat. Const., § 23.28 (4th Ed. 1985).

We conclude, therefore, that the district court erred in concluding that Section 28–29–04, N.D.C.C., has self-terminated and no longer is in existence.

■ The Lunds assert that because the confiscatory-price defense provisions of Sections 28–29–04, 28–29–05 and 28–29–06, N.D.C.C., authorize post-judgment relief they should be allowed to present the merits of their defense under those provisions whether or not they are able to raise adequate grounds for relief from the judgment under Rule 60(b), N.D.R.Civ.P. We disagree. Where, as in this case, a party has failed to present a timely answer or a timely response to a motion for default judgment and has not raised the confiscatory-price defense provisions until after a default judgment has been entered, that party must proceed under Rule 60(b), N.D.R. Civ.P. In *First Federal Savings and Loan Ass'n v. Hulm*, 328 N.W.2d 837 (N.D. 1982), we stated in relevant part:

"This Court has consistently followed a policy of liberally construing Rule 60(b), N.D.R.Civ.P., for purposes of vacating a default judgment to permit a case to be heard and decided on its merits.... Nevertheless, in each case in which this Court has set aside a default judgment under Rule 60(b), N.D.R.Civ.P., the movant provided an explanation for having permitted the entry of the default judgment which, in the court's opinion, constituted a sufficient justification for setting aside the default judgment to allow the case to be heard on its merits." 328 N.W.2d at 840.

The Lunds, to be entitled to present the merits of their confiscatory-price defense, must justify reopening the judgment under Rule 60(b), N.D.R.Civ.P.

Because the trial court based its denial of the motion to reopen the judgment on the erroneous belief that Section 28–29–04, N.D.C.C., had self-terminated, it must now make a redetermination of the request to vacate the judgment under the grounds for relief of Rule 60(b), N.D.R.Civ.P.

■ In its complaint, the PCA stated that it "may" seek a deficiency judgment in a separate action. The Lunds assert that the PCA failed to meet the notice requirement of Section 32–19–04, N.D.C.C., by not stating in the complaint that it "shall" seek a deficiency judgment. Section 32–19–04, N.D.C.C., provides in relevant part:

"The plaintiff shall also state in his complaint whether he will in a later and separate action demand judgment for any deficiency which may remain due to him after sale of the mortgaged premises against every party who is personally liable for the debt secured by the mortgage."

The Lunds' interpretation of this provision is unpersuasive. The obvious intent of the statute is to require notice to the defendant in a foreclosure action that he is subject to personal liability for the balance of the debt remaining after sale of the mortgaged premises. The statement in PCA's complaint that it may seek a deficiency judgment in a separate action provided the Lunds with precisely the notice contemplated and required by Section 32–19–04, N.D.C.C. The PCA's use of the term "may" instead of "shall" did not render the notification less effective, and very possibly it constituted the more accurate statement of the two alternatives. Accordingly, we conclude that the deficiency notification provided by PCA in its complaint complied with Section 32–19–04, N.D.C.C.

In view of our determination that this case must be remanded for reconsideration by the trial court of the Lunds' request to reopen the judgment, we conclude that it is unnecessary to discuss or resolve other issues raised in this appeal. Accordingly, we reverse that part of the amended judgment denying the Lunds' motion to reopen the judgment, and we remand for reconsideration of that motion.

ERICKSTAD, C.J., GIERKE and LEVINE, JJ., and PEDERSON, Surrogate Justice, concur.

PEDERSON, Surrogate Justice, sitting in place of MESCHKE, J., disqualified.

LEVINE, Justice, specially concurring.

The trial judge's reading of the statute is precisely the same as mine would have been, were I sitting in his place. But unlike the trial court, I have had the benefit of the majority's thoughtful and persuasive analysis. Like the trial court, I too believed that when the 1933 legislature bestowed upon the courts the authority to massage time constraints "until" the price of farm products equaled the cost of production, it meant "until" that event occurred and not thereafter. The majority, by changing the emphasis and order of the words of the statute, has also changed my mind.

Any doubt is further assuaged by force of the legal imperative that we uphold the validity of a statute when possible and apply the construction supporting its validity rather than the alternative that would defeat it. The majority has convincingly accomplished the feat.

While I acknowledge that the action of a subsequent legislature does not generally indicate the intent of an earlier legislature, I still find comfort in abandoning my errant view for the majority's construction when I consider that the 1985 legislature could have acted in response to our Folmer and Heidt decisions as well as the seminal law review article on the subject: Vogel, The Law of Hard Times: Debtor and Farm Relief Actions of the 1933 North Dakota Legislative Session, 60 N.D.L.R. 489 (1984). That it did nothing fortifies my conclusion that the majority has correctly divined the legislative intent in its construction while paying heed most certainly to the spirit of the statute and with certainty enough to the letter of the law.

I thus concur in the rationale and result.

PEDERSON, Surrogate Judge, concurring specially.

I agree that Justice VandeWalle reached the proper answers to the questions before this court on this appeal. Because of my concern that the *confiscatory-price defense* statutes have been repeatedly argued

on appeals in which this court has been prevented from reaching the troublesome merits, I make an additional suggestion to the trial court: Until hearings are held and arguments heard on all issues, it is not possible for the trial court or this court to determine whether any of the powers apparently granted to the courts by these statutes will permit the court to provide any litigant any real benefit that does not violate constitutional rights of other litigants.