FIRST AMERICAN BANK & TRUST
OF CARRINGTON, Plaintiff
and Appellee,

v.

McLAUGHLIN INVESTMENTS, a limited partnership, and Mary J. McLaughlin, a general partner, Defendants and Appellants.

FIRST AMERICAN BANK & TRUST
OF CARRINGTON, Plaintiff
and Appellee,

v.

McLAUGHLIN INVESTMENTS, a
limited partnership, Defendant,

and

Mary J. McLaughlin, a general partner,
Defendant and Appellant.

Civ. Nos. 11359, 11420.

Supreme Court of North Dakota.

May 28, 1987.

Thomas J. Aljets, Carrington, for plaintiff and appellee.

J. Bill Hansen, Fargo, for defendants and appellants.

MESCHKE, Justice.

McLaughlin Investments, a limited partnership, and Mary J. McLaughlin, its general partner, appeal from an order denying relief from a default judgment entered after McLaughlins appeared by counsel. They also appeal from an order denying their motion to quash execution on the judgment. We affirm.

On January 15, 1985, McLaughlins borrowed $10,000 from First American Bank & Trust on a 90–day promissory note. The repayment date coincided with McLaughlins' anticipated receipt of funds from financing of construction of a duplex. Disbursement of funds from the duplex was delayed and, on April 15, 1985, McLaughlins renewed the principal for thirty days. An extension agreement with the Bank on July 16, 1985 again moved the due date, this time to September 16, 1985, but said that the Bank would "not be responsible to further extend the payments...." While the duplex has since been completed, funds have not been disbursed, apparently because of a dispute with the construction contractor.

McLaughlins did not pay the note and the Bank sued McLaughlins to collect in February 1986. McLaughlins retained attorney Bill Hansen. On March 12, 1986, Hansen advised the Bank's attorney that McLaughlins would confess judgment and pay $1500 immediately if the Bank would take no post-judgment steps until June 15, 1986. The Bank agreed and, on March 19, 1986, sent settlement documents to Hansen for completion by McLaughlins.

On April 2, 1986, the Bank's attorney wrote Hansen, asking about status of the confession of judgment. Receiving no response, the Bank's attorney mailed a "Notice of Application for Default Judgment" to Hansen on April 17, 1986:

"You are hereby notified that you are in default in the above entitled action which was commenced by the service of a Summons and Complaint upon yourself on February 4, 1986. Because you have

failed to plead or otherwise interpose an answer, application will be made to the court for a default judgment for the relief demanded in the Complaint. This application may be made at any time after eight days from the service of this notice."

Hansen wrote back on April 24, 1986, offering a different settlement. The Bank's attorney wrote Hansen on May 1, 1986, rejecting the new proposal, but stating the Bank would still accept the confession of judgment and reminding Hansen of the default. Three weeks later, on May 22, 1986, default judgment was entered.

While the Bank's attorney did not give notice of entry of judgment, he wrote Hansen on August 4, 1986 that default judgment had been entered. Pursuant to an execution issued August 6, 1986,[1] the sheriff levied on farmland owned by McLaughlins.

On September 11, 1986, McLaughlins moved to reopen the default judgment and to quash execution. The motions were accompanied by affidavits, including a joint affidavit by two partners, Mary J. McLaughlin and Jim McLaughlin, and an affidavit by their attorney, Bill Hansen.

McLaughlins' affidavit outlined how the summons and complaint were submitted to attorney Hansen "for his advice." McLaughlins "expressed to ... Hansen that they wanted to try to maintain good relations with" the Bank and Hansen "suggested to them that they consider signing a confession of judgment and delivering it to the [Bank] and at the same time make a $1500.00 payment...." McLaughlins were "hopeful" that this would give them time to "receive the FMHA proceeds necessary to pay off the debt." Later, after a fruitless meeting with all of the participants in the duplex project, McLaughlins met with Hansen in June, 1986, and, "shortly thereafter ... informed Mr. Hansen that they were unwilling to sign the confession of judgment." Their affidavit neither explained why they changed their mind about

the settlement nor what Hansen was to do then.

Hansen's affidavit similarly outlined McLaughlins' "desire ... to maintain cordial relations" with the Bank, their hope that they "would soon be paid funds" to pay the Bank, and how the confession of judgment settlement "was a way to try to maintain a working relationship" with the Bank. His affidavit described the correspondence through May 1, 1986, but does not show any attention to the matter by Hansen between May 1 and August 4, 1986, when Hansen was advised of the default judgment. Hansen claimed that he

"had also expected that Mary June McLaughlin would be willing to sign the confession of judgment and that the bank note could be paid from the FMHA proceeds prior to June 15, 1986; that affiant did not intend to let the matter go into default but expected that the lawsuit could be settled and the bank could be paid off in full without the necessity of the affiant putting in an answer on behalf of McLaughlin Investments; ... that at the time the default judgment was entered affiant was not cognizant of the impending danger of the default judgment due to his preoccupation with these other matters in trying to resolve the problems interfering with payment of the FMHA proceeds to McLaughlin Investments and Jim McLaughlin."

The trial court denied relief, observing that McLaughlins "knew exactly what was going on ... and if they didn't, they certainly had an opportunity to discuss the matter with their attorney and to ask him exactly what the status was." The trial court ruled that McLaughlins "have not shown ... where there was mistake, inadvertence, surprise or excusable neglect, or other reasons for this Court to set aside the judgment."

McLaughlins appeal from the order declining to reopen the default judgment, claiming that the trial court abused its discretion in refusing to grant relief from the

---

1. NDRCivP Rule 62(a) says: "Except as stated herein, no execution may issue upon a judgment ... *until the expiration of 10 days after notice of*

*its entry if the opposing party appeared...."* (our emphasis.)

judgment for reasons of "mistake, inadvertence, surprise, or excusable neglect" under NDRCivP Rule 60(b)(i).

*Bender v. Liebelt,* 303 N.W.2d 316, 318 (N.D.1981), summarized our approach in reviewing an order denying relief from a default judgment:

> "Decisions on the merits are of course preferable to those by default.... In keeping with the general policy of construing Rule 60(b) liberally with regard to default judgments, ... this court will 'grant motions to reopen judgments, when promptly made, when the grounds stated satisfy the requirements of Rule 60 for reopening, and when an answer appearing to state a meritorious defense is presented.' ... However, the Liebelts must show not simply that the lower court made a 'poor' decision but that it positively abused the discretion it has in administering the rule." [citations omitted.]

Since the trial court did not address the timeliness of the motion[2] or the merits of the claimed defense,[3] neither do we. The single issue is whether the "grounds stated satisfy the requirements of Rule 60 for reopening." Our standard of review of a Rule 60(b) order is whether the trial court abused its discretion. *Watne v. Watne,* 391 N.W.2d 636, 638 (N.D.1986).

*First Federal Savings and Loan Association v. Hulm,* 328 N.W.2d 837, 840 (N.D. 1982), reviewed a number of decisions of this court on reopening default judgments and observed:

> "... [I]n each case in which this Court has set aside a default judgment under Rule 60(b), N.D.R.Civ.P., the movant provided an explanation for having permitted the entry of the default judgment which, in the court's opinion, constituted a sufficient justification for setting aside the default judgment to allow the case to be heard on its merits."

Hansen justifies his claim, that he excusably and inadvertently failed to file the answer for McLaughlins, by asserting he was pre-occupied with other matters and was unaware of the "impending danger" of the default judgment. Ordinarily, disregard of legal process is not excusable neglect, *Bender, supra,* 303 N.W.2d at 318, although occasionally extenuating circumstances may create an excuse. *See Citizens' National Bank of Sisseton, S.D., v. Branden,* 19 N.D. 489, 126 N.W. 102 (1910). No extenuating circumstances are shown here. Since many attorneys are busy, an attorney's busy schedule does not usually excuse complete neglect of an important deadline. *See Mission Investment Co. v. Perfect Totalisator Corp.,* 51 Mich.

---

**2.** No notice of entry of the default judgment was given to McLaughlins' attorney until August 4, 1986. Because McLaughlins had appeared in the action, even though no answer had been filed for them, the delay in notice of entry of judgment would affect timeliness under NDRCivP Rule 60(b). While neither Rule 55 nor Rule 60(b) explicitly requires notice of entry of a default judgment, Rule 60(b) was amended in 1983 to provide:

> "The motion must be made within a reasonable time, and for reasons (i), (ii), and (iii) not more than one year after *notice that* the judgment or order was entered in the action or proceeding *if the opposing party appeared, but not more than one year after a judgment by default has been entered.*" (emphasis shows amendment.)

The Explanatory Note to Rule 60(b) was also expanded in 1983:

> "Subdivision (b) was amended in 1983, effective September 1, 1983, to provide that a motion for relief for reasons (i), (ii), and (iii) be made not more than one year after 'notice that' the judgment or order was entered ex-

cept for default judgments [where] the time starts to run from date of entry."

In any event, notice of entry of a default judgment bears upon whether a motion to reopen it is within a reasonable time, particularly where the defaulting party has appeared. *See also* NDRCivP Rule 4(b)(4) on "voluntary general appearance."

**3.** *See First Federal Savings and Loan Association v. Hulm,* 328 N.W.2d 837, 840 (N.D.1982). No proposed Answer accompanied the motion to reopen. McLaughlins' affidavit described their dealings with the Bank which, they claim, show a defense that the note was not due because the Bank "agreed to wait until the completion of the [duplex] project for payment of the note." In a zealous but dubious burst of expression in his brief on appeal, counsel for McLaughlins characterizes this defense as "misrepresentation by the [Bank] as to the terms of repayment of the note which misrepresentation was relied on by [McLaughlins] to their detriment and constituted a fraud on the [McLaughlins]."

App. 376, 380, 214 N.W.2d 898, 901 (1974). Here, the time for responding to the summons and complaint was repeatedly disregarded—at the expiration in March of the time for responding to the summons, following the "Notice of Application for Default Judgment" on April 17, and following the letter reminder of the default on May 1.

In *King v. Montz*, 219 N.W.2d 836, 839–840 (N.D.1974), we expressed our reluctance to attribute a lawyer's error to a client who had not been personally negligent. But, McLaughlins were personally involved in the decision not to file a timely response. They personally participated in weighing problems with their proposed defense, their desire to maintain cordial relations with the Bank, and their expectations of early receipt of funds to pay the debt, before deciding not to file a timely response. They authorized their attorney to negotiate a settlement with the Bank. He did so and he kept them informed. McLaughlins chose not to accept the arranged settlement. Rule 60(b) is not to be used to relieve a party from calculated and deliberate choices. *Kuehl v. Lippert*, 401 N.W.2d 523 (N.D.1987).

Attorney Hansen's failure to file an answer does not constitute "something more" or "extraordinary" which might justify relief under NDRCivP Rule 60(b)(vi). Again, McLaughlins' choices while advised by counsel brought about the default. *See First National Bank of Crosby v. Bjorgen*, 389 N.W.2d 789, 796 (N.D.1986).

McLaughlins suggest that the trial court erroneously applied our recent decision in *Production Credit Association of Minot v. Lund*, 389 N.W.2d 585 (N.D.1986), in denying their motion to reopen the default judgment when it reasoned:

"However, in the *Lund* case the Supreme Court said that you cannot open a judgment to raise the confiscatory price defense. You must open it under one of the grounds set forth in Rule 60(b) NDRCivP."

In *Lund,* we did not imply that "you cannot open a judgment to raise the confisca-

tory price defense." Rather, we ruled that, to get to the merits of a confiscatory-price defense raised after entry of a foreclosure judgment, a movant must justify reopening the default judgment for one of the reasons given in NDRCivP Rule 60(b). *Lund,* 389 N.W.2d at 588. Essentially, that is what the trial court said in this case, even if the expression was imprecise.

But, McLaughlins did not file a proposed answer claiming the confiscatory-price statutes as a defense. The only defense set out in McLaughlins' affidavit in support of reopening was that the note was not yet due because the Bank "had agreed to wait...." McLaughlins only invoked the confiscatory-price statutes in support of their motion to quash the execution.

The trial court denied McLaughlin's motion to quash execution, saying that since the judgment "has not been reopened, this Court will not quash the execution." On their appeal of that order, McLaughlins urge that NDCC § 28–29–04 authorized the trial court to quash the execution whether or not the judgment was reopened. That section authorizes a district court to:

"... stay the entry of judgment or the issuance of execution thereon, ... whenever in the judgment of the court the strictly legal procedure in any cause will confiscate or tend to confiscate the property of any litigant by forcing the sale of agricultural products upon a ruinous market."

In their affidavit supporting their motion to quash execution, McLaughlins claimed that the market value of their farmland had slipped from $800 per acre in 1981 to approximately $500 per acre "at this time." They claimed that at an execution sale "the land will not bring a fair price and it will be sold much below its real value which is different from the present depressed market value of farm property."

Whether or not that showing is sufficient to invoke NDCC § 28–29–04, we need only decide here whether the statute authorizes quashing of an execution.[4] It does not.

**4.** "Quash" is defined as "to overthrow; to abate; to vacate; to annul; to make void; *e.g.* to quash an indictment." Black's Law Dictionary 1120 (5th ed. 1979).

Only a stay of issuance of an execution is authorized. Therefore, we affirm the trial court's order denying the motion to quash execution.

We affirm the decision of the district court.

ERICKSTAD, C.J., and LEVINE, VANDE WALLE and GIERKE, JJ., concur.