In the Matter of the ESTATE of Chris E. JENSEN, a. k. a. Chris Jensen, Deceased.

Tove Emilie Maren MICHAELSEN and Niels Christian Preben Jensen, Respondents,

v.

Ella J. UNDHJEM; Ella J. Undhjem, Administratrix; Olivia Sorine Josefine Fredrike Christiansen, a. k. a. Olivia Meier; George Christensen, a. k. a. George Christiansen; Agnes Hedensten; Marie Anderson; Dagmar S. Nielsen; Olivia Peterson; Emanuel Christiansen, a. k. a. Emanuel Christensen; Elna Lauritsen; and Kenneth Christensen, Appellants.

No. 8497.

Supreme Court of North Dakota.

Nov. 14, 1968.

Rehearing Denied Dec. 10, 1968.

B. L. Wilson, Bowbells, and Rolfstad, Winkjer, Suess & Herreid, Williston, for appellants.

McGee, Van Sickle, Hankla & Backes, Minot, and Johnson & Sands, Minneapolis, Minn., for respondents.

ERICKSTAD, Judge.

All parties to this action descend from a common female ancestor, Emilie Maria Christiansen Jensen, who was born in Denmark August 9, 1851, and died there December 19, 1895.

Emilie Christiansen bore four illegitimate children: Karl Christian Vilhelm Christiansen, born November 4, 1870; Madsine Caroline Amalie Christiansen, born December 18, 1872; Laurits Valdemar Frederik Kristensen, born October 7, 1876; and Olivia Sørine Josefine Frederikke Christiansen, born August 4, 1879. All of these people were born in Denmark and emigrated to the United States.

On January 15, 1884, Emilie Christiansen was married to Niels Christian Jensen, who was born February 24, 1850, and died May 27, 1933. She bore him three children: Christian Edvard Martinus Jensen, the decedent in this case, born April 14, 1884; Dagmar Marie Magdalene Jensen, born May 30, 1887, died June 28, 1890; and Daniel Marinus Magnus Jensen, born September 11, 1892, died June 20, 1964.

So far as the record of this case discloses, Christian (Chris) Jensen never married nor had children. His half sister Olivia, now Mrs. Meier, is living in the State of New York. All of the other children of Emilie Christiansen Jensen are dead.

The grandchildren of Emilie Christiansen Jensen are: George Christiansen, Agnes Hedensten, and Marie Anderson, who are the children of Karl Christiansen; Dagmar Nielsen, Olivia Peterson, Emanuel Christensen, and Elna Lauritsen, who are the children of Madsine Christiansen; Ella Undhjem and Kenneth Christensen, who are the children of Laurits Kristensen; and Tove Emilie Maren Michaelsen and Niels Christian Preben Jensen, who are the children of Magnus Jensen. The last two named grandchildren, Danish nationals, are the respondents in this case; and all the other grandchildren, plus Olivia Christian-

sen Meier and Ella Undhjem in her capacity as the administratrix of the estate of Chris E. Jensen, are the appellants.

In the instant case all but one of the individual appellants are issue of illegitimate children; but as the issue of illegitimate children are subject to the same rule of law as are the illegitimate children, we shall hereafter refer to the appellants as the illegitimate children and to the respondents as the legitimate children.

A genealogical table to assist in one's understanding of the relationships of the parties follows:

## GENEALOGICAL CHART

NOTE: In addition to the two sons shown, Emilie Christiansen Jensen also bore a legitimate daughter to Niels Jensen, Dagmar Marie Magdalene Jensen, b. May 30, 1887, d. June 28, 1890.

A summary of the pertinent procedural facts follows:

Chris E. Jensen, the distribution of whose estate is in dispute in this lawsuit, died intestate on July 30, 1965, at the Lutheran Home for the Aged in Minot. At the time of his death he was a resident of Ward Township in Burke County, North Dakota. Mr. Jensen's estate was estimated by Ella Undhjem in her petition for appointment as administratrix to be of the value of $125,000. In the petition for her appointment as administratrix Mrs. Undhjem listed the individual appellants and the respondents as the next of kin and heirs at law of Chris E. Jensen. Letters of administration were issued to Mrs. Undhjem on September 10, 1965. As the respondents, whom we have designated in this opinion as the legitimate children, are residents of Denmark, service of the notice of the petition for appointment of administratrix was served on them through service upon the Honorable Gordon A. Johnson, vice consul of Denmark, with offices at Minneapolis, Minnesota.

By notice dated August 24, 1966, the hearing of the petition for approval of the final report and accounting and for distribution of the residue of the estate was set for September 16, 1966. The legitimate children, through the Danish consul general, whom they had made their attorney in fact, and the consul general, through the law firm of which he is a member, associated with the law firm of McGee, Van Sickle, Hankla & Backes, resisted the petition on the ground that only the legitimate children were entitled to share in the residue of the Chris E. Jensen estate. After receiving briefs on the law from the respective parties, the county court granted the petition for approval of the final report and accounting and for distribution of the residue of the estate, which permitted the illegitimate children to share with the legitimate children. (The children of the deceased illegitimate children and the children of the legitimate child were permitted to share by right of representation.)

Thereafter the legitimate children appealed from the order of the county court dated November 14, 1966, to the District Court of Burke County. That court concluded, following a hearing on the appeal, that N.D.C.C. § 56–01–05 prohibited the illegitimate children from inheriting from the deceased. Pursuant to the district judge's order of November 8, 1967, judgment was entered on November 10, 1967, providing that the legitimate children were the only heirs at law of the deceased, Chris E. Jensen, and thus the only ones entitled to share in his estate. It is from that judgment and from the order denying the motion to vacate the judgment that the present appeal is taken by Ella J. Undhjem, individually and as administratrix of the estate of Chris E. Jensen, deceased, and by the other named appellants in their individual capacities.

Following the entry of the judgment the illegitimate children, having then secured the services of a lawyer other than the one who represented them before the entry of the judgment, moved on March 29, 1968, to vacate the judgment under N.D.R.Civ.P. 60(b). Before the judgment the illegitimate children, as well as the administratrix of the estate, were represented by Mr. B. L. Wilson; thereafter Mr. Wilson was assisted by Mr. Dean Winkjer of the law firm of Rolfstad, Winkjer, Suess & Herreid.

In support of the motion to vacate the judgment the new counsel asserted that the failure on the part of the former counsel to investigate the laws of the Kingdom of Denmark relating to the births and to possible legitimating acts constituted mistake, inadvertence, and excusable neglect, and that § 56–01–05, which prohibits an illegitimate child from inheriting lineally or collaterally through its natural mother, is contrary to the due process and equal protection clauses of the fourteenth amendment to the United States Constitution. On behalf of the illegitimate children counsel asserted that the judgment should be vacated so that further investigation could be made

in Denmark concerning Danish law and facts surrounding the illegitimate births and possible subsequent marriage or marriages between the mother and the father or fathers of the children, and so that the defense of the unconstitutionality of the statute could be raised on the trial court level.

This motion was resisted by the legitimate children. By memorandum opinion dated May 7, 1968, the district court denied the motion on the ground that it would be an abuse of its discretion to set aside the judgment under rule 60(b).

The basic question in this case is whether an illegitimate child can inherit from a legitimate child of their common mother. Statutes or parts thereof pertinent to a determination of that question follow:

56–01–04. Order of succession to property.—When any person having title to any estate not otherwise limited by marriage contract dies without disposing of the estate by will, it is succeeded to and must be distributed, unless otherwise expressly provided in this code, subject to the payment of his debts, in the following manner: * * *

3. If there is no issue, nor husband, nor wife, nor father, nor mother, then in equal shares to the brothers and sisters of the decedent and to the children of any deceased brother or sister by right of representation; * * *

56–01–05. Inheritance by child born out of wedlock.—Every child born out of wedlock is an heir of the person who in writing signed in the presence of a competent witness acknowledges himself to be the father of such child. In all cases such child is an heir of his mother. He inherits the father's or mother's estate, in whole or in part, as the case may be, in the same manner as if he had been born in lawful wedlock. He, however, does not represent his father or mother by inheriting any part of the estate of the kindred of his father or mother, either lineal or collateral, unless before his

death his parents shall have intermarried and his father after such marriage shall have acknowledged him as his child or adopted him into his family. In that case such child and all the legitimate children in such family are considered brothers and sisters and on the death of any one of them intestate and without issue the others, subject to the rights in the estate of such deceased child of the father and mother, respectively, as is provided in this code, inherit his estate as his heirs in the same manner as if all the children had been born in wedlock. The issue of all marriages null in law or dissolved by divorce are deemed to have been born in wedlock.

56–01–06. Mother's inheritance from child born out of wedlock.—If a child born out of wedlock who has not been acknowledged or adopted by the father dies intestate without lawful issue, his estate goes to his mother, or in case of her decease, to her heirs at law.

* * * * * *

56–01–12. Kindred of half blood inherit—Exception.—Kindred of the half blood inherit equally with those of the whole blood in the same degree, unless the inheritance comes to the intestate by descent, devise, or gift of some one of his ancestors. In such case all those who are not of the blood of such ancestors must be excluded from such inheritance.

North Dakota Century Code.

As the decedent died intestate, not limited by a marriage contract, and without issue nor husband nor wife nor father nor mother surviving him, one might conclude, in view of § 56–01–04(3), that his brothers and sisters and the children of deceased brothers and sisters by right of representation should inherit from him, regardless of their illegitimacy or their descent from illegitimates and their denial of inheritance at common law—as in this state there is no common law when the law is declared by the code [see Nuelle v. Wells, 154 N.W.2d

364 (N.D.1967)]—were it not for the clause contained in the introductory paragraph of § 56–01–04 which limits the order of succession set forth in that section by the phrase "unless otherwise expressly provided in this code."

Because of that phrase we are required to search the other sections of the code to determine whether there are other provisions in it which would vary that order of succession. When § 56–01–05 is examined, we note that it otherwise provides, when, in referring to the inheritance of a child born out of wedlock, it states that he "does not represent his father or mother by inheriting any part of the estate of the kindred of his father or mother, either lineal or collateral, unless before his death his parents shall have intermarried and his father after such marriage shall have acknowledged him as his child or adopted him into his family."

Since no evidence was offered during the trial of this case to show that the parents of the illegitimate children were intermarried and that the father after such marriage acknowledged the children as his children or adopted them into his family, the illegitimate children, under § 56–01–05, were prevented from inheriting any part of the estate of the kindred of their mother.

But it is argued that kindred of the half blood inherit equally with those of the whole blood in the same degree unless the inheritance comes to the intestate by descent, devise, or gift of some one of his ancestors, and that in the instant case there is no evidence that any of the inheritance came to the intestate in that manner.

In examining these sections of the code, however, we note that they all stem from the Territorial Civil Code of 1877, being §§ 778, 780, and 787, respectively.

We see that § 778 contains the "unless otherwise expressly provided" clause similar to that contained in § 56–01–04; that § 780 contains a clause which prohibits an illegitimate child from inheriting any part of the estate of his or her kindred except under certain conditions, similar to that clause contained in § 56–01–05; and that § 787 is almost identical to § 56–01–12, relating to inheritance by half bloods.

To the extent that the provisions of § 56–01–04 may seem inconsistent with the provisions of § 56–01–05, the special provisions concerning inheritance by illegitimates must prevail over the general provisions concerning inheritance.

Pertinent is the rule of construction contained in § 1–02–07:

1–02–07. Particular controls general. —Whenever a general provision in a statute shall be in conflict with a special provision in the same or in another statute, the two shall be construed, if possible, so that effect may be given to both provisions, but if the conflict between the two provisions is irreconcilable the special provision shall prevail and shall be construed as an exception to the general provision, unless the general provision shall be enacted later and it shall be the manifest legislative intent that such general provision shall prevail.

North Dakota Century Code.

That the special should prevail over the general in this instance is consistent with the views expressed in In re Berg's Estate, 72 N.D. 52, 4 N.W.2d 575, 577, 140 A.L.R. 1312 (1942). There this court said that C. L.1913 § 5743 (equivalent to N.D.C.C. § 56–01–04) fixed the rights of legitimate children and that C.L.1913 § 5745 (equivalent to N.D.C.C. § 56–01–05) provided for inheritance by illegitimate children. That being so, it is only logical to conclude that if § 56–01–05 is constitutional, § 56–01–12 (the successor to C.L.1913 § 5752), which sets out the rights of half bloods, relates also only to legitimate half bloods sharing with legitimate whole bloods.

Interesting in light of certain conclusions we anticipate making in determining a later phase of this opinion—although not decisive in the sense that it could cause the provisions of §§ 56–01–04 and 56–01–12 to

prevail over the provisions of § 56–01–05—is some of the legislative history of § 56–01–05.

In 1917 Representative B. G. Tenneson introduced H.B. 131, which made every child a legitimate child of its natural parents and provided a procedure for establishing such parentage. The parts of that bill as enacted which are pertinent to the issues of this case read:

§ 1. Every child is hereby declared to be the legitimate child of its natural parents and as such is entitled to support and education, to the same extent as if it had been born in lawful wedlock. *It shall inherit from its natural parents and from their kindred heir lineal and collateral.* (emphasis added)

\* \* \* \* \* \*

§ 3. This action shall be deemed cumulative as to the remedies contained in sections 10483 to 10500 inclusive, relating to bastardy proceedings, but all children hereafter born in this state shall be deemed to be legitimate.

§ 4. All acts and parts of acts in conflict herewith are hereby repealed.

ch. 70, [1917] N.D. Laws.

In 1922 the Uniform Illegitimacy Act was approved by the National Conference of Commissioners on Uniform State Laws. In 1923 North Dakota adopted the uniform act with some minor amendments, including the omission of the nonexclusiveness clause.

The Lawyers Cooperative Publishing Company, publisher of the 1925 Supplement to the Compiled Laws of 1913, in its explanatory note to Ch. 5B, Criminal Procedure, said:

This chapter consisting of Laws 1917, ch. 70, was evidently intended to be repealed by the Uniform Illegitimacy Act consisting of Laws 1923, ch. 165 (§§ 10500a1–10500a37, ante,) as appears from the express wording of the title set out in the note preceding § 10500a1, ante, and from § 10500a37, ante.

■ That the publisher assumed too much is evident. The title of an act may limit the scope of the act, but it cannot broaden or extend its effect as expressed in the body. 1 J. Sutherland, Statutory Construction § 1709 (3d ed. F. Horack 1943); State ex rel. Robertson v. Circuit Court, 215 Ind. 18, 17 N.E.2d 805, 810 (1938); Kincheloe v. State, 146 Tex.Cr. R. 414, 175 S.W.2d 593, 598 (1943).

The body of S.B. 187, which was ch. 165 of the 1923 session laws, did not specifically repeal, nor was it inconsistent with, those provisions of H.B. 131 (ch. 70 of the 1917 session laws) providing for inheritance. Notwithstanding, the revisor's note to ch. 32–36 of the report of the Code Revision Commission for the 1943 Revised Code contained the following with reference to the effect of the uniform act:

S.L.1917, c. 70; 1925 Supp., ss. 10500b1 to 10500b3, inclusive, have been omitted on the grounds that it was the intention of the legislative assembly to repeal this act by S.L.1923, c. 165 for in the title to that act it is stated "An Act . . . for the Repeal of Sections 10483 to 10500, inclusive, Compiled Laws of 1913, and Chapter 70, Laws of 1917." The repeal clause to the act does not show the repeal but is merely a restatement of the repeal clause of the Uniform Act. Then, too, the act appears to be inconsistent with certain portions of S.L.1923, c. 165. There has been no decision by the supreme court on this question and, if it is included in the code, it will then be specifically enacted. If the legislative assembly wants this provision included, it can again be enacted.

Although the foregoing reasoning of the Code Revision Commission may have been faulty, their decision to omit ch. 70 from the code resulted in its repeal when the North Dakota Revised Code of 1943 was adopted without it. Pertinent thereto is:

1–0219. Effect upon former laws; Repeals. No statute, law, or rule is continued in force because it is consistent

with the provisions of this code on the same subject, but in all cases provided for by this code all statutes, laws, and rules heretofore in force in the state, whether consistent or not with the provisions of this code, unless expressly continued in force by it, are all repealed and abrogated. This repeal or abrogation does not revive any former law heretofore repealed, nor does it affect any right already existing or accrued or any action or proceeding already taken, except as in this code provided, nor does it affect any private or local statute not expressly repealed, nor any outstanding appropriation.

North Dakota Revised Code of 1943 [now North Dakota Century Code § 1–02–19].

See Higgins v. Hawks, 122 N.W.2d 129, 132 (N.D.1963).

In spite of the fact that Representative Tenneson's bill repealed § 5745 (the predecessor of N.D.R.C.1943 § 56–0105 and N.D.C.C. § 56–01–05), which prohibited an illegitimate child from inheriting any part of the estate of the kindred of its father or mother, either lineal or collateral, except under certain conditions, and in spite of § 1–02–16, which provides that the repeal of a statute which repealed another statute does not revive the first repealed statute, the 1943 Code Revision Commission included that section in the proposed revised code in § 56–0105 with only the following comment:

> Revised for clarity without change in meaning. Throughout this section the reviser has used "child born out of wedlock" as a substitute for "illegitimate child." This is done so that the provisions of the section may conform to the present practice in welfare work of avoiding the term "illegitimate" in designating a child born out of wedlock.

By H.B. 49 of the 1943 session of the legislature the North Dakota Revised Code of 1943 was adopted. The adoption of the code, which included § 5745 under the number 56–0105, again disabled the illegitimate from inheriting any part of the estate of the kindred of his father or mother, either lineal or collateral, except as provided therein.

North Dakota, in this incredible manner, turned full circle to a re-embracement, with slight modification, of the common law, which treated an illegitimate child as a child of no one and deprived him of being an heir of anyone. For the common law see 10 C.J.S. Bastards §§ 21 and 24 (1938); and 10 Am.Jur.2d Bastards §§ 146 and 165 (1963).

The revival of § 5745 in the form of § 56–0105 was a return to the unjust rule which visited the sins of the parents upon the unoffending offspring. This law, as unfair as it is when judged in the light of principles of justice, is our law; and unless it may be found to be in violation of our state or federal constitution, it must govern in this case.

From what we have said, it is clear that unless the trial court erred in denying the motion to vacate the judgment, or unless the issue of the unconstitutionality of the statute may be reached upon appeal when it was not first raised in the trial court, the illegitimate children may not be entitled to any relief; and in that case the judgment and the order denying the motion to vacate the judgment must be affirmed.

We shall now face the issue of whether the trial court erred in denying the motion to vacate the judgment under N.D.R.Civ.P. 60(b).

Rule 60(b) reads:

> Mistakes; Inadvertence; Excusable Neglect; Newly Discovered Evidence; Fraud; Etc. On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment or order in any action or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could

not have been discovered in time to move for a new trial under Rule 59(b); ■ fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment. The motion shall be made within a reasonable time, and for reasons (1), (2), and (3) not more than 1 year after the judgment or order was entered in the action or proceeding. * * *

North Dakota Rules of Civil Procedure.

There having been no argument that the motion was not timely made, we shall consider the merits of the motion. It was based on subsections (1) and (6) of the rule. In support three basic contentions were made.

The first was that if the judgment was vacated and the appellants were given additional time to investigate in Denmark, they might be able to prove that before the death of the children, the parents intermarried, and that after such marriage, the father acknowledged the children as his children or adopted them into his family.

■ The evidence produced in support of that contention was that it appears that the name of the father of one of the illegitimate children is now known, whereas at the time of the trial, evidence was received without objection to the effect that the fathers of the illegitimate children were unknown.

We believe that on this showing the trial court did not abuse its discretion and that, accordingly, it did not err in this respect.

■ We recently said:

An application to vacate a judgment is addressed to the trial court's sound dis-

cretion, the exercise of which will not be disturbed on appeal except for abuse.

Zundel v. Zundel, 146 N.W.2d 896 (N.D. 1966), Syllabus 1.

■ The second contention was that the Danish law was different from North Dakota law, and that under Danish law the children were perhaps legitimated. In light of the inadequacy of the evidence submitted in support of the alleged Danish law and facts justifying the application of the law, and without determining whether it is the statute of inheritance at the situs of the property or the personal law of the child that is relevant in determining the status of a child as legitimate or illegitimate for the purpose of inheritance, we conclude that the trial court did not abuse its discretion and thus did not err in this respect, either.

For those who are interested, a discussion of what law governs may be found in 10 Am.Jur.2d Bastards § 152 (1963).

The third contention was that through mistake, inadvertence, or excusable neglect, the former counsel failed to assert the argument that § 56–01–05 is unconstitutional as a violation of the due process and equal protection clauses of the fourteenth amendment to the United States Constitution. In support it was argued that the attorney who tried the case was in his late eighties at the time of the trial and thus assumedly was not as alert to this issue as he should have been; and that he was in effect lulled into complacency by the fact that he and his arguments had prevailed in the county court and that therefore he thought it important only to reassert the arguments he made in the county court, thereby sustaining the county court's ruling. It was argued that the motion could be sustained under either subsection (1) or subsection (6) of rule 60(b).

Thus, the question now before us is whether the trial court abused its discretion in refusing to vacate the judgment so that the constitutional issue could be considered by the trial court and subsequently,

in the event that the trial court found no merit in the contention that the statute was unconstitutional, so that the constitutional issue could be argued in this court on appeal.

The pertinent part of the trial court's memorandum opinion denying the motion to vacate the judgment reads:

The gist of this motion is that the newly retained lawyers for appellees desire the judgment set aside so that they can attack the constitutionality of section 56–01–05 NDCC, which has been in effect for seventy or more years. Counsel for appellants have advanced compelling arguments to point out that even if the statute were to be declared unconstitutional, it would not result in the appellees (illegitimate child or children of the illegitimates) inheriting any of the estate. Who knows but that Mr. Wilson [the former counsel] did consider the constitutionality of the statute but decided against raising it for the reasons set forth in appellants' brief? But regardless of whether he did or did not, I have come to the conclusion that at this stage of the proceedings, it would be an abuse of discretion for me to set aside the judgment, either under subdivision (1) or subdivision (6) of Rule 60(b). The motion is dismissed.

In the respondents' brief, in support of the trial court's order denying the motion to vacate, they make the following arguments:

It is well settled by this Court that the trial court's discretion on Rule 60(b) motions is reviewable only for abuse of discretion. Zundel v. Zundel (1966), 146 N.W.2d 896; 30A Am.Jur. Judgments § 632 (Discretion of Court), p. 605; 3 Barron & Holtzoff-Wright Federal Practice and Procedure, Rules Edition, § 1323 (Discretion of Court), p. 89, § 1332 (Review), p. 433.

As is apparent from the Memorandum Opinion of the trial court dated May 7, 1968, at pages 29 and 30 of the record on appeal and the transcript on the motion, the trial court has spent considerable time with the facts and law. Its sound legal discretion led it to deny the motion, saying it would be an abuse to do otherwise.

There is no showing of abuse of established legal principles. There is no showing of abuse as concerns the facts.

In their brief in resistance to the motion before the trial court, the respondents asserted the issue to be:

Does second-guessing of experienced counsel's handling of facts and theory in litigation permit a new trial under Rule 60(b) (1) and (6)?

In support of their negative answer to that question the respondents' brief before the trial court continues:

The law governing rule 60(b) motions is clear that a defeated litigant cannot set aside a judgment because of failure to interpose a defense which could have been presented or might have been pleaded in defense of action or at trial, 3 Barron and Holtzoff-Wright, Federal Practice and Procedure, Rules Edition, § 1325 (Mistake, inadvertence, etc.) p. 407, 30A Am.Jur.Judgments, § 681 (Matters pertaining to original cause of action) p. 648.

The purpose and intent of Rule 60(b) is not to permit its use to circumvent another rule. To allow defenses waived in prior litigation under N.D.R.C.P. 12(H) (Waiver of Defenses) and case law established thereunder to be abused in this instance would be a perversion of Rule 60(b). Edwards vs. Velvac, Inc. (1956) 19 F.R.D. 504, 507 and Barron and Holtzoff-Wright, supra, § 1325 p. 406.

It is well settled that a motion under rule 60(b) alleging excusable neglect, mistake, or inadvertence, will be denied where: "the defendants, having lost their case on one theory, now seek to try it on another. This cannot be allowed,

if trials are to conclude anything." Colonial Book Co., Inc. vs. Amsco School Publications, Inc., D.C.N.Y. 48 F.Supp. 794, affirmed [2 Cir.] 142 F.2d 362 citing Cuno Engineering Corp. vs. Hudson Auto Supply Co. [D.C.], 49 F.2d 654; Hicks vs. Ferdinand [C.C.], 20 F. 111 and others.

Let us analyze the respondents' arguments. The case cited as supporting the statement of the respondents taken from § 1325 of 3 Barron & Holtzoff-Wright is Colonial Book Co. v. Amsco School Publications, Inc., 48 F.Supp. 794 (S.D.N.Y. 1942), aff'd 142 F.2d 362 (2d Cir.1944). In that case the defendant made a motion for new trial and asserted that his motion was made pursuant to Fed.R.Civ.P. 59 and 60.

The facts were that the plaintiff, Colonial Book Co., had secured a judgment against Amsco School Publications for infringement of a certain copyright. Thereafter the same plaintiff brought an action against Oxford Book Co. for an infringement of the same copyright. In dismissing the complaint against Oxford Book Co., the court said that the judge in *Amsco* did not have before him the evidence presented in *Oxford*, and for that reason the decision in *Amsco* was in no way controlling. Amsco School Publications sought to have the judgment against it set aside on the ground that if it were permitted to submit the same evidence as had been submitted in *Oxford*, which was also available to it, it would prevail. This ground was held to be insufficient to justify relief under rule 60(b).

■ *Amsco* may be distinguished from the instant case, as the motion in *Amsco* was made so that new evidence which was submitted in *Oxford* could be offered in *Amsco*, with the hoped-for result of dismissal of the plaintiff's complaint, as occurred in *Oxford*. *Amsco* thus involved an attempt to vacate a judgment so that different evidence could be submitted. This is clearly distinguishable from the effort made in the instant case to set aside

the judgment so that the constitutionality of the controlling statute could be raised.

We may also say, without discussing in detail the cases cited as supporting the statement taken from 30A Am.Jur. Judgments § 681 (footnote 17) (1958), that none of them involves an attempt to have a judgment vacated so that a constitutional issue might be argued.

The respondents, in support of their contention that to permit rule 60(b) to circumvent rule 12(h) would be to permit a perversion of rule 60(b), cite the case of Edwards v. Velvac, Inc., 140 F.Supp. 936 (E. D.Wis.1956), 19 F.R.D. 504, cert. denied 354 U.S. 942, 77 S.Ct. 1397, 1 L.Ed.2d 1537.

An analysis of *Edwards* discloses that the facts therein are hardly comparable to those of the instant case, for in *Edwards* the movants attempted to have a judgment set aside for the alleged reason that they desired to have certain clerical errors corrected and then have the same judgment reinstated, whereas the real reason was that they had failed to file their notice of appeal within the 30-day period fixed by Fed.R.Civ.P. 73(a); and they thought that by having the judgment reopened and corrected and reinstated, they would gain another 30-day period within which to file their notice of appeal. Again, no constitutional issue was involved, and no showing of mistake, inadvertence, surprise, or excusable neglect was made. We think it is significant, however, that in denying the motion, the court made this statement:

> Whether the grant of the relief asked for here—vacation, amendment and reinstatement of the final order or judgment —would in a meritorious case have the effect of establishing new limits within which to file notice of appeal was not presented and is not decided.

Edwards v. Velvac, Inc., supra, 19 F.R.D. 504, 508.

■ We believe that rule 12(h) must give way in many instances to rule 60(b) if rule 60(b) is to serve the purposes for

which it is intended. See In re Braun, 145 N.W.2d 482 (N.D.1966).

Although the court in *Edwards* failed to apply rule 60(b), it described the purposes of the rule and its counterparts as follows:

> Rule 60(b) and its counterparts in state statutes, have proven themselves to be valuable, equitable and humane discretionary powers by which courts have been able to relieve the oppressed from the burden of judgments unfairly, fraudulently or mistakenly entered. * * * Edwards v. Velvac, Inc., supra, 19 F.R.D. 504, 507.

In an analysis of the respondents' argument we note that it cites *Cuno* and *Hicks* as supporting their contention. In *Cuno*, a case decided by the Circuit Court of Appeals for the Second Circuit in 1931, the time for appeal had expired, and the decree could only be attacked by reopening the case. The only reason given for the belated application to reopen the case was a change of counsel after the trial and a supposed misapprehension on the part of former counsel as to the defendants' rights, and also a failure to discover two prior patents thought to show invalidity of the patent in suit.

The distinguishing features are that in this case the motion to vacate the judgment was made within the time prescribed by rule 60(b) and well within the time for appeal to this court from the judgment. Again, no constitutional issue was raised.

*Hicks,* decided in 1884 by the Circuit Court of the Southern District of New York, involved an application to amend the answer and for a rehearing on the ground of newly discovered evidence. In denying the motion the court said that courts of equity, as well as courts of law, in such cases proceed with great caution and extend no indulgence to the negligent.

It should be noted that *Hicks* involved facts, not law, and that no constitutional issue was raised. It may also be of some interest that the case was decided fifty-three years before the adoption of the federal rules of civil procedure.

Pursuing further the arguments of the respondents made before the trial court but not thus far set forth herein, we quote:

> Even assuming the so-called constitutional defense here could be interposed it is well established that a change of the law by the U.S. Supreme Court after judgment is not a basis for vacating judgment entered before announcement of change, 3 Barron & Holtzoff, supra, § 1325 p. 407 and 30A Am.Jur.—Judgments § 710 (Appellate proceedings; Change in Judicial Views), § 712 (Adjudication of invalidity of statute) p. 670.

> In our case this Court's opinion was rendered October 24, 1967, and judgment entered November 10, 1967. No announcement of change of law has yet been made, although on November 6, 1967, the U.S. Supreme Court agreed to consider Levy vs. State, La. [App.], 192 So.2d 193, [389 U.S. 925, 88 S.Ct. 290] 19 L.Ed.2d 276. The law demands denial of motion based on hoped for changes when said change reflects the only possible merit to the newly asserted theory. Exactly in point is the ruling on a motion to vacate in Collins vs. City of Wichita (1958) [10 Cir.], 254 F.2d 837. Subsequent to judgment a U.S. Supreme Court decision invalidated the identical statute involved in the *Collins* case on the basis of the due process clause of the U.S. Constitution, 14th Amendment. Motion to vacate was denied, stating change of law is not grounds to vacate.

> It would appear that the case now before the Court is even further removed as being subject to vacation as the moving parties are looking to mere possible decision in the future which is in no way related to classification statutes in intestate estates.

*Collins* was a case which had been before the United States Court of Appeals for the Tenth Circuit on a former appeal, at which time the court had upheld the va-

lidity of a Kansas statute relating to the notice required to be given a landowner in condemnation proceedings. The court noted that on November 7, 1955, certiorari had been denied by the United States Supreme Court and that judgment had become final. More than a year later in another case between different parties but involving the validity of the same statute, the United States Supreme Court held that the notice provisions of the statute did not measure up to the requirements of the due process clause of the fourteenth amendment. Thereafter the appellants filed a motion in the district court in which they sought relief from the judgment under Fed.R.Civ.P. 60(b). The motion was overruled and the appeal was taken. On appeal the circuit court affirmed the district court. In affirming, the circuit court said:

> Litigation must end some time, and the fact that a court may have made a mistake in the law when entering judgment, or that there may have been a judicial change in the court's view of the law after its entry, does not justify setting it aside. (citations omitted)

> Collins v. City of Wichita, 254 F.2d 837, 839 (10 Cir.1958).

*Collins* is distinguishable from the instant case. The appellants in the instant case sought to have the judgment set aside so that they might present the issue of the unconstitutionality of the statute involved to the court, that it might be considered on appeal to the Supreme Court. In *Collins* the constitutional issue was submitted to the trial court, and on appeal the circuit court affirmed the trial court in its determination that the statute was constitutional. We therefore believe that the holding in *Collins* has no application to the instant case.

On the other hand, the appellants assert that in some cases public policy requires the opening or vacating of a judgment on a ground which was available as a defense in the original proceeding. In support they refer the court to Dial v. Kirkpatrick, 168 Okl. 21, 31 P.2d 591, 95 A.L.R. 1263 (1933).

In *Dial* the plaintiffs brought an action in district court on a conditional sales contract and obtained a deficiency judgment against the Dials. At the time of the execution of the contract Mr. Dial was a member of the Osage tribe of Indians. Mr. Dial had not received a certificate of competency at the time of the contract's execution, and the indebtedness had never been approved by the Secretary of the Interior of the United States. To satisfy the judgment the plaintiffs attempted to levy execution upon land allotted to Mr. Dial as a member of the Osage Indian tribe. When this was done Mr. Dial filed in the trial court a motion to quash the levy of execution and to vacate it on the ground that the previous judgment was void.

By § 6 of Act of Congress of February 27, 1925, 43 Stat. 1011, it was provided: "No contract for debt hereafter made with a member of the Osage Tribe of Indians not having a certificate of competency, shall have any validity, unless approved by the Secretary of the Interior."

The plaintiff urged that even though the judgment was contrary to law, the defendant was precluded from asserting the illegality of the contract after the judgment.

In rejecting that argument the Oklahoma Supreme Court quoted one of its previous decisions:

> This court considered this question in the case of the City of Norman v. Van Camp, 87 Okl. 182, 209 P. 925, wherein it was held: "Where a judgment or any part thereof clearly violates the plain provisions of the Constitution or statutes, such judgment or the part thereof that is in direct conflict with the Constitution or statutes is to that extent void and cannot be enforced."

> Dial v. Kirkpatrick, 168 Okl. 21, 31 P.2d 591, 95 A.L.R. 1263 (1933).

Leaving the various arguments of the parties herein momentarily, let us review the background of rule 60(b).

When the United States Supreme Court's Advisory Committee was formulating the rules, Mr. Warren Olney, Jr., a member of the committee from California, recommended the pertinent provisions of § 473 of the California Code of Civil Procedure, which deals with relief from a judgment on the basis of mistake, inadvertence, surprise, or excusable neglect. The committee, on Mr. Olney's urging, substantially adopted the pertinent provisions of § 473, as the first two sentences (particularly the first) of the original rule 60(b). 7 J. Moore, Federal Practice ¶ 60.10, at 11 (2d ed. 1955).

Because of original rule 60(b)'s derivation from the California code and the decisions of the California courts construing their statute, Moore made this statement concerning construction of the rule:

> From the California decisions it was reasonable to construe original Rule 60(b) as follows:
>
> 1. The rule is remedial in nature and should be construed liberally.
>
> 2. Original Rule 60(b) applied to both interlocutory and final orders and judgments.
>
> 3. Relief by motion from a judgment on the basis of fraud was within the intendment of the Rule.
>
> 4. Even without the first saving clause, and *a fortiori* with it, original Rule 60(b) provided a cumulative remedy and did not impair any ancillary or independent jurisdiction of the federal courts to relieve a party from a judgment or order, and hence such proceedings as were available in the federal courts as audita querela, writs of error coram nobis, bills of review, and independent actions in equity were still available.
>
> 5. Independent equitable relief may be obtained, in addition to an original action, by a motion addressed to the court in which the judgment or order was rendered. Ancillary proceedings must, of course, be brought in that court. (footnotes omitted)

7 J. Moore, Federal Practice ¶ 60.10[9], at 31–32 (2d ed. 1955).

Because original rule 60(b) continued to utilize the common law and equitable remedies and thus compelled a historical search for an approach to remedies, it is said that the original rule needed a complete overhaul in a manner comparable to the revision of 1946.

Moore's work on federal practice concludes that following the 1946 revision of the federal rules, when the district court has the power to act, pursuant to the provisions of rule 60(b), relevant propositions and factors that it may consider in exercising its discretion are:

> the general desirability that a final judgment should not be lightly disturbed; the procedure provided by Rule 60(b) is not a substitute for an appeal; the Rule should be liberally construed for the purpose of doing substantial justice; whether, although the motion is made within the maximum time, if any, provided by the Rule, the motion is made within a reasonable time; if relief is sought from a default judgment or a judgment of dismissal where there has been no consideration of the merits, whether in the particular case the interest of deciding cases on the merits outweighs the interest in orderly procedure and in the finality of judgments, and whether there is merit in the defense or claim, as the case may be; if relief is sought from a judgment rendered after a trial on the merits, whether the movant had a fair opportunity to present his claim or defense; whether there are any intervening equities which make it inequitable to grant relief; and any other factor that is relevant to the justice of the judgment under attack, bearing always in mind that the principle of finality of judgments serves a most useful purpose for society, the courts, and the litigants—in a word, for all concerned. (footnotes omitted)

7 J. Moore, Federal Practice ¶ 60.19, at 225–26 (2d ed. 1955).

 Considering all of those factors, but especially emphasizing (1) that the rule should be liberally construed for the purpose of doing substantial justice; (2) that there is merit in the defense or claim that has been asserted; (3) that there are no intervening equities which would make it inequitable to grant relief in the instant case, the monies having been preserved by the administratrix; and (4) for the further reason, which we believe comes within rule 60(b) (6), that the meritorious defense questioning the validity of the controlling statute constitutes such a fundamental issue that it should not be avoided nor trampled upon by a too technical construction of a rule that is intended to do justice, we conclude that the trial court abused its discretion in not vacating the judgment so that the constitutional issue could be heard.

For the significance of reaching a constitutional question we rely on the precedent established by Chief Justice Marshall in Marbury v. Madison, 1 Cranch 137, 2 L.Ed. 60 (1803).

In In re Braun, supra, 145 N.W.2d 482, 484 (N.D.1966), referring to rule 60(b) (6), we said:

This broad language gives the courts ample power to vacate judgments whenever such action is appropriate to accomplish justice. * * *

In *Braun* this court found that the trial court had abused its discretion in denying the motion brought pursuant to rule 60(b) for relief from a certain order, notwithstanding that the motion might not have been timely made.

In the instant case, having held that the trial court abused its discretion in denying the motion, we deem the constitutional issue to be before us on appeal and shall now consider the issue on its merits.

The appellants contend that § 56–01–05 is unconstitutional in that it is violative of the equal protection of the laws clause and the due process clause of the fourteenth amendment to the United States Constitution and of the privileges and immunities clause of § 20 of the North Dakota Constitution.

The fourteenth amendment to the United States Constitution reads in part:

Section 1. All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

Section 20 of the North Dakota Constitution reads:

No special privileges or immunities shall ever be granted which may not be altered, revoked or repealed by the legislative assembly; nor shall any citizen or class of citizens be granted privileges or immunities which upon the same terms shall not be granted to all citizens.

The appellants assert that there are two sections other than § 56–01–05 that are pertinent to this discussion, namely, § 56–01–12 and § 56–01–06.

Section 56–01–12 reads:

56–01–12. Kindred of half blood inherit—Exception.—Kindred of the half blood inherit equally with those of the whole blood in the same degree, unless the inheritance comes to the intestate by descent, devise, or gift of some one of his ancestors. In such case all those who are not of the blood of such ancestors must be excluded from such inheritance.

North Dakota Century Code.

Half bloods having been given the right to inherit equally with whole bloods, the

question arises whether the legislature may, without violating the fourteenth amendment to the United States Constitution and § 20 of the North Dakota Constitution, by another law treat half bloods who are illegitimate differently from those persons who are legitimate, whether they be half blood or whole blood. Let us delay answering that question until later.

Section 56–01–06 reads:

56–01–06. Mother's inheritance from child born out of wedlock.—If a child born out of wedlock who has not been acknowledged or adopted by the father dies intestate without lawful issue, his estate goes to his mother, or in case of her decease, to her heirs at law.

North Dakota Century Code.

Here we see that under this section legitimate children could inherit from illegitimate children through their common mother upon her decease, notwithstanding that § 56–01–05 prohibits the illegitimate child from inheriting from the legitimate child through their common mother.

■■■■■■ A proper preliminary to a consideration of the issue of the constitutionality of § 56–01–05 is Syllabus 5, 6, and 7 of Melland v. Johanneson, 160 N.W.2d 107, 109 (N.D.1968):

5. Sections 11 and 20 of the North Dakota Constitution and § 1 of the fourteenth amendment to the United States Constitution do not prohibit or prevent classification, provided such classification is reasonable for the purpose of legislation, is based on proper and justifiable distinctions considering the purpose of the law, is not clearly arbitrary, and is not a subterfuge to shield one class or to burden another or to oppress unlawfully in its administration.

6. A proper classification for legislative purposes must embrace all who naturally belong to the class.

7. Legislation cannot arbitrarily divide a class into two parts and constitute a different rule of law governing each of the parts.

■■■■ There is no question that a classification has been made between legitimate and illegitimate children. The question is whether the classification is reasonable and necessary to effect the purpose of the law, which is otherwise within the province of the legislature to enact. See State v. Miller, 129 N.W.2d 356 (N.D.1964), Syllabus 1.

■■■■ This has been otherwise stated by the United States Supreme Court as follows:

Classification "must always rest upon some difference which bears a reasonable and just relation to the act in respect to which the classification is proposed, and can never be made arbitrarily and without any such basis."

McLaughlin v. Florida, 379 U.S. 184, 190, 85 S.Ct. 283, 287, 13 L.Ed.2d 222 (1964), quoting Gulf, Colo. & Santa Fe Ry. v. Ellis, 165 U.S. 150, 155, 17 S.Ct. 255, 41 L.Ed. 666 (1897).

That the legislature may prescribe rules of descent of property for persons dying intestate within the state is undenied. The basic question is whether it may do so in such an arbitrary manner that it offends the respective provisions of the state and federal constitutions which guarantee to every citizen the equal protection of the laws. As was said by the United States Supreme Court on a different subject (though pertinent to this issue), "the privilege to vote in a state is within the jurisdiction of the state itself, to be exercised as the state may direct, and upon such terms as to it may seem proper, provided, of course, no discrimination is made between individuals in violation of the Federal Constitution." Carrington v. Rash, 380 U.S. 89, 91, 85 S.Ct. 775, 777, 13 L.Ed. 2d 675 (1965), quoting Pope v. Williams, 193 U.S. 621, 24 S.Ct. 573, 48 L.Ed. 817 (1904).

Subsequent to the trial court's ruling denying the motion to vacate the judgment in

the instant case the United States Supreme Court rendered a decision in which it held that a statute which denied to illegitimate children the right to recover for wrongful death of their mother, on whom they were dependent, constituted invidious discrimination against them and thus was in violation of the equal protection clause of the fourteenth amendment to the United States Constitution.

In that case, Justice Douglas, speaking for the majority, said:

> We start from the premise that illegitimate children are not "nonpersons." They are humans, live and have their being. They are clearly "persons" within the meaning of the Equal Protection Clause of the Fourteenth Amendment.
>
> \* \* \* \* \* \*
>
> \* \* \* When the child's claim of damage for loss of his mother is in issue, why, in terms of "equal protection," should the tortfeasors go free merely because the child is illegitimate? Why should the illegitimate child be denied rights merely because of his birth out of wedlock? He certainly is subject to all the responsibilities of a citizen, including the payment of taxes and conscription under the Selective Service Act. How under our constitutional regime can he be denied correlative rights which other citizens enjoy?
>
> \* \* \* \* \* \*
>
> We conclude that it is invidious to discriminate against them when no action, conduct, or demeanor of theirs is possibly relevant to the harm that was done the mother. (footnotes omitted)

Levy v. Louisiana, 391 U.S. 68, 70, 88 S.Ct. 1509, 1510–1512, 20 L.Ed.2d 436 (1968).

■ Applying the reasoning in *Levy*, as no action, conduct, or demeanor of the illegitimate children in the instant case is relevant to their status of illegitimacy, we conclude that the classification for purposes of inheritance contained in § 56–01–05, which is based on such a status and which results in illegitimate children being disinherited while their legitimate brothers and sisters inherit, is unreasonable.

Accordingly, considering § 56–01–05 in light of § 56–01–06, and in light of the repeal in 1917 of C.L.1913, § 5745, the predecessor of § 56–01–05, and its incredible return to life, we have no hesitancy in holding that § 56–01–05 is unconstitutional as an invidious discrimination against illegitimate children in violation of § 1 of the fourteenth amendment to the United States Constitution and § 20 of the North Dakota Constitution. This statute, which punishes innocent children for their parents' transgressions, has no place in our system of government, which has as one of its basic tenets equal protection for all.

Although not significant from the standpoint of the legal issues of this lawsuit, we think it should also be noted that most states have by legislative action departed from the harshness of the common law as it related to illegitimates, and that both California and New York, states from which we have derived much of our code, have changed their laws recently to permit illegitimate children to inherit from and through their mothers. See Cal.Prob.Code § 257 (West 1956); N. Y. Estates, Powers and Trusts Law, McKinney's Consol. Laws, c. 17–b, § 4–1.2 (McKinney 1967).

As the respondents have contended that even if § 56–01–05 is found to be unconstitutional, the appellants will gain no relief therefrom for the reason that the common law will apply and under common law the illegitimates would not be entitled to inherit from the decedent, we shall direct our attention to that contention briefly.

■ With it we do not agree. As we have said in a recent decision: "In this state there is no common law in any case in which the law is declared by the Code." Nuelle v. Wells, 154 N.W.2d 364 (N.D. 1967), Syllabus 1.

That being the rule, with § 56–01–05 struck down as being in violation of the equal protection clauses of § 1 of the fourteenth amendment to the United States Constitution and § 20 of the North Dakota Constitution, the appellants are entitled to share in the decedent's estate by virtue of § 56–01–04(3) and § 56–01–12, which provide for inheritance without regard to legitimacy.

For the reasons stated the order of the district court denying the motion to vacate the judgment and the judgment are hereby reversed, and the case is remanded to the district court for further proceedings according to law and this opinion.

TEIGEN, C. J., and STRUTZ, PAULSON and KNUDSON, JJ., concur.