229 So.2d 449 (1969)
Succession of Ezra VINCENT.
Lou Bertha LABINE, Natural Tutrix of the minor child, Rita Nell Vincent, Plaintiff-Appellant,
v.
Simon VINCENT, Administrator of the Succession of Ezra Vincent, Defendant-Appellee.
No. 2912.
Court of Appeal of Louisiana, Third Circuit.
December 18, 1969.
Rehearing Denied January 7, 1970.
Writ Refused February 27, 1970.
*450 Cox & Cox, by James Cox, Lake Charles, for plaintiff-appellant.
Kaufman, Anderson, Leithead, Scott & Boudreau, by James A. Leithead, Lake Charles, for defendant-appellee.
Before TATE, CULPEPPER, and MILLER, JJ.
TATE, Judge.
This is a contest over the estate of Ezra Vincent. His illegitimate daughter, through her tutrix, claims his estate. The trial court dismissed the claim. The tutrix appeals.
The decedent died intestate. He was survived by no spouse, ascendants, nor legitimate descendants. An administration was opened by the decedent's collateral heirs, who inherit from him under Louisiana law to the exclusion of illegitimate children. Louisiana Civil Code Articles 206, 919 (1870).[1] The illegitimate child claiming her father's estate was formally acknowledged by him by notarial act during his lifetime.
*451 The illegitimate child contends that she should inherit on the same basis as a legitimate child. She argues that the cited Louisiana inheritance statutes unconstitutionally violate equal protection and due process guarantees, since they deny an illegitimate child the right to inherit solely because of the illegitimacy. Levy v. Louisiana, 391 U.S. 68, 88 S.Ct. 1509, 20 L.Ed.2d 436 (1968); Glona v. American Guarantee and Liab. Ins. Co., 391 U.S. 73, 88 S.Ct. 1515, 20 L.Ed.2d 441 (1968).
Last year in Levy and Glona the United States Supreme Court held that the denial of wrongful death benefits merely because of illegitimacy constitutes an invidious discrimination which violates the due process and equal protection clauses of the United States Constitution. The Louisiana wrongful death statute (Civil Code Article 2315) was invalidated to the extent that it denied illegitimate children or their parents the right to recover on the same basis as the enactment permits where the birth is legitimate.
The appellant relies on reasoning similar to that followed by the Supreme Court of North Dakota in Estate of Jensen, N.Dak., 162 N.W.2d 861 (1968). There, the court invalidated a North Dakota statute which granted inheritance rights to legitimate children but denied them to illegitimates. In so holding, the court states, 162 N.W.2d 878:
"Applying the reasoning in Levy, as no action, conduct, or demeanor of the illegitimate children in the instant case is relevant to their status of illegitimacy, we conclude that the classification for purposes of inheritance contained in [the North Dakota statute making the distinction between legitimate and illegitimate children], which is based on such a statute and which results in illegitimate children being disinherited while their legitimate brothers and sisters inherit, is unreasonable.
"Accordingly, * * *, we have no hesitancy in holding that [such statute] is unconstitutional as an invidious discrimination against illegitimate children in violation of § 1 of the fourteenth amendment of the United States Constitution and § 20 of the North Dakota Constitution. This statute, which punishes innocent children for their parents' transgressions, has no place in our system of government, which has as one of its basic tenets equal protection for all."
See also R____ v. R____, Mo., 431 S.W. 2d 152 (1968); Storm v. None, 57 Misc.2d 342, 291 N.Y.S.2d 515 (Family Ct., 1968); Note, 43 Tul.L.Rev. 383, 391-92 (1969).
This reasoning is persuasive. Nevertheless, we do not accept the holdings of Levy and Glona as deciding more than that wrongful death enactments create an unreasonable exemption from tort liability by allowing illegitimacy to bar recovery of tort damages otherwise due. The decisions found only that there was no rational basis for assuming that marriage would be discouraged and illegitimacy encouraged by denying recovery for subsequent wrongful deaths.
On the other hand, these decisions did not modify certain basic concepts: A state has great latitude in making classifications, so that differences and distinctions in treatment offend the constitutional guarantees only when the variations are arbitrary and without rational basis. Morey v. Doud, 354 U.S. 457, 77 S.Ct. 1344, 1 L. Ed.2d 1485 (1957); United States v. Burnison, 339 U.S. 87, 70 S.Ct. 503, 94 L.Ed. 675 (1950). Further, the regulation of descent and distribution are peculiarly within the powers reserved to the states. United States v. Burnison, 339 U.S. 87, 70 S.Ct. 503, 94 L.Ed. 675 (1950); Harris v. Zion's Savings Bank & Trust Co., 317 U.S. 447, 63 S.Ct. 354, 87 L.Ed. 390 (1943).
Louisiana Civil Code Articles 206 and 919 do not violate constitutional guarantees solely because they constitute enactment in an area traditionally within the *452 power of the states to regulate, nor solely because they represent a determination of succession (or of non-succession of illegitimates) of ancient origin in our own law and commonly found from ancient times in most other jurisdictions. See Louisiana Civil Code 1808, Book 3, Title 1, Chapter 3, Article 44;[2] 10 C.J.S. Bastards Section 29.
They are constitutional, also, because, within the broad powers of classification by the state legislature, there is a reasonable basis for the denial of inheritance to illegitimates equal to that of legitimate children.
First. However unfair it may be to punish innocent children for the fault of their parents, nevertheless such denial may within the legislative discretion properly have a tendency to encourage marriage and to discourage illegitimacy, valid social aims of the state. Non-marriage and illegitimacy might not be deterred by the not-readily-foreseeable subsequent death by tort, or at least Levy and Glona so held in invalidating illegitimacy as a ground for denial of wrongful death benefits. But, since all men must die and leave their property behind for their successors, the denial of inheritance rights to illegitimates might reasonably be viewed as encouraging marriage and legitimation of children.[3]
Second. Such a regulation might reasonably serve the vital interest of a state in the stability of its land titles and in the prompt and definitive determination of the valid ownership of property left by decedents. It might aid to avoid the disruptions and uncertainties to result from unknown and not easily ascertained claims through averments of parentage, bona fide or otherwise, as to a decedent no longer present to disprove them.[4] See Strahan v. Strahan, 304 F.Supp. 40 (WD La., 1969).
We conclude that the trial court correctly denied the claim of the illegitimate child to inheritance rights.
As to an alternative claim, we likewise find no manifest error in the court's conclusion that the illegitimate child is not entitled to alimony from her father's estate under the provisions of Civil Code Articles 240-242, 243, 919. The court found that the child is not in need of such support (a codal prerequisite) because she is drawing $100 per month in social security and veterans administration benefits.
For the reasons assigned, therefore, we affirm the judgment of the trial court dismissing *453 the claims of the child, at the cost of the appellant.
Affirmed.

On Application for Rehearing.
En Banc. Rehearing denied.
Savoy, J., recused.
NOTES
[1] Article 919 provides: "Natural children are called to the inheritance of their natural father, who has duly acknowledged them, when he has left no descendants nor ascendants, nor collateral relations, nor surviving wife, and to the exclusion only of the State.

In all other cases, they can only bring an action against their natural father or his heirs for alimony, the amount of which shall be determined, as is directed in the title: Of father and Child."
Article 202, in defining "natural children", provides: "Illegitimate children who have been acknowledged by their father, are called natural children; those who have not been acknowledged by their father, or whose father and mother were incapable of contracting marriage at the time of conception, or whose father is unknown, are contradistinguished by the appellation of bastards."
Article 206 provides: "Illegitimate children, though duly acknowledged, can not claim the rights of legitimate children. The rights of natural children are regulated under the title: Of Successions."
[2] See reprint of de la Vergne Volume containing Moreau-Lislet's source notes, Digest of the Civil Laws, Territory of New Orleans, 1808, p. 155 overleaf, indicating the source to be in the traditional Spanish law in force before Louisiana became part of the United States, including the Partidas 6, tit. 13, loi 8, and the Fuero Real, Book 3, tit. 6, loi 8. The reprint was made available to the law libraries and appellate courts of Louisiana through republication by the Louisiana State University and Tulane University Schools of Law in 1968. See Franklin, An Important Document in the History of American Roman and Civil Law: The de La Vergne Manuscript, 33 Tul.L.Rev. 35 (1958). As the de la Vergne foreword and Franklin article translating it show, the Fuero Real and Partidas represent thirteenth century codifications of customary and Roman law then already ancient.
[3] Here, for instance, the child could have been legitimated by the marriage of her parents. Louisiana Civil Code Article 198. Those in similar circumstances might be induced to legalize their relationship and legitimize their children by the harsh result of the regulation presently upheld, or so it might reasonably be believed by the legislature.
[4] In fairness to appellant, it should be observed that she counters this suggestion by noting that the state could probably reasonably restrict inheritance to illegitimates duly acknowledged by the decedent during his lifetime. Interestingly enough, the French follow a variation of this approach. See: Code Napoleon Article 757; Planiol, Civil Law Treatise, Volume 3, Sections 1821-28 (LSLI translation, 1959).